[No. 33324. Department Two. February 9, 1956.]

ELLA ROBERTSON, as *Executrix, Appellant,* v. CLUB EPHRATA *et al., Respondents.*[1]

[1] Reported in 293 P. (2d) 752.

*Wilmot W. Garvin,* for appellant.

*M. R. Donovan, Southard & Palmer,* and *William M. Clapp,* for respondents.

WEAVER, J.—At the close of plaintiff's evidence, the trial court granted defendants' motions to dismiss and for judgment of nonsuit. Plaintiff appeals from a judgment dismissing her action with prejudice.

Plaintiff, as executrix of the estate of H. H. Robertson, deceased, commenced this action for judgment upon a promissory note of $17,251.85, plus accrued interest, and for the foreclosure of a chattel mortgage given to secure the promissory note.

The note, dated October 18, 1949, is payable to "Frank R. Dungan or order" and is signed

"J. G. Dungan, President
"F. R. Ahlquist, Secretary-Treasurer."
The note does not identify a corporate maker. It is endorsed as follows:

"For value received I herewith transfer this note to H. H. Roberston subject to the payments as recorded on the books of the Club Ephrata.

"Frank R. Dungan"

The chattel mortgage, dated October 18, 1949, states that it is given to secure the payment of the note we have just described. Therein, "Club Ephrata, Inc." is designated as the mortgagor and Frank R. Dungan as the mortgagee. The mortgage is signed:

"Club Ephrata, Inc.
"J. G. Dungan, President
"F. R. Ahlquist, Secretary"

It bears acknowledgment and a statutory affidavit of good faith, in which the signers, as "president and secretary of the Mortgagor," state that the "property mortgaged is

reasonably worth $17,251.85." By separate instrument, dated January 15, 1952, this mortgage was assigned by F. R. Dungan to H. H. Robertson.

The mortgage covers a substantial list of personal property and "any additional fixtures and equipment purchased by Club Ephrata, Inc., and located in the above described club quarters."

The complaint prays for judgment on the promissory note against Club Ephrata, J. G. Dungan and wife, F. R. Ahlquist and wife, and Frank R. Dungan and wife, together with foreclosure of the chattel mortgage.

Club Ephrata appeared and denied everything set forth in the complaint, including its own corporate existence, although the verification of the answer of the club by its president discloses that it is a "non-profit corporation of the State of Washington." In addition, the club pleaded six affirmative defenses: (1) that it did not execute the promissory note; (2) that it received no consideration for the chattel mortgage; (3) that the note and mortgage are illegal and void as contrary to public policy, because eight mechanical slot machines were a part of the property included; (4) that the note and chattel mortgage are illegal and void, because they sprung from an illegal transaction, used by the club to acquire a class "H" liquor license and thus defraud the Washington state liquor control board; (5) that the consideration failed, because mechanical slot machines were later declared illegal and performance became impossible; and (6) that the plaintiff is not the real party in interest and hence, cannot maintain this action.

J. G. Dungan, F. R. Ahlquist (whose names appear on the promissory note and chattel mortgage), and their wives appeared together. They pleaded a general denial and six affirmative defenses, including the alleged illegality of the transaction. They also pleaded a defense that the assignment of the note and mortgage by *Frank R.* Dungan to H. H. Robertson was without consideration.

Frank R. Dungan and wife appeared together. Their general denial and six affirmative defenses parallel those of J. G. Dungan and F. R. Ahlquist.

■ Defendants neither offered nor refused to offer evidence. They stood upon their motions to dismiss and for judgment of nonsuit. Counsel for both plaintiff and defendants presented findings of fact and conclusions of law to the trial court. In this, we believe, they were in error, for the trial court's oral opinion discloses that it treated plaintiff's evidence as true and uncontradicted and held, *as a matter of law*, that plaintiff had not established a *prima facie* case. It did not weigh the evidence, so there were no affirmative facts for the court to find. *Broderius v. Anderson*, 54 Wash. 591, 103 Pac. 837 (1909). Hence, findings of fact were unnecessary. *Richards v. Kuppinger*, 46 Wn. (2d) 62, 278 P. (2d) 395 (1955).

In *State ex rel. Washington Water Power Co. v. Superior Court*, 41 Wn. (2d) 484, 487, 250 P. (2d) 536 (1952), we held that Superior Court Rule 17, 34A Wn. (2d) 118, which requires the trial court to make findings of fact in all cases, legal or equitable, does not require findings of fact and conclusions of law where they were not formerly required in actions at law.

In *Kinney v. Sando*, 28 Wn. (2d) 252, 182 P. (2d) 45 (1947), this court indicated, in a situation somewhat similar to the instant one, that findings of fact were not only unnecessary, but also improper.

In *Arneman v. Arneman*, 43 Wn. (2d) 787, 795, 264 P. (2d) 256 (1953), we held that no findings of fact were required when an action was dismissed at the conclusion of plaintiff's case. We held that the assignments of error to the findings of fact presented the general question of what the facts were, with reference to the matters and things placed in issue by the pleadings, and whether such facts established a *prima facie* case.

■ Reason and justice support the rule. If findings of fact, which the trial court entered at this stage of the proceedings, are to be considered, then, on this appeal, plaintiff must establish that her evidence preponderates against the findings of fact. On the other hand, if the findings of fact need not be considered (and, in the instant case we believe

them unnecessary at this stage of the proceedings), then the question is whether plaintiff's evidence establishes a *prima facie* case. In making that determination, plaintiff is entitled to have the evidence, and all reasonable inferences therefrom, interpreted in a manner most favorable to her. *Metzger v. Quick,* 46 Wn. (2d) 477, 282 P. (2d) 812 (1955). Defendants have the burden of proving their affirmative defenses. Plaintiff may establish a *prima facie* case under the complaint and the denials thereto without disproving the affirmative defenses which defendants have pleaded.

Defendants' cross-examination of plaintiff and her witnesses was sufficiently broad to lay a foundation for the argument that the note and mortgage were the unnatural children of an illegal transaction.

The primary reason the trial court granted the motions for nonsuit was the alleged illegality of the transaction. We feel, therefore, that we must consider the question of illegality, not because it is pleaded as an affirmative defense, but because it is a question raised by the record which a court may notice, under some circumstances, even without such a defense being pleaded. *Sinnar v. LeRoy,* 44 Wn. (2d) 728, 270 P. (2d) 800 (1954), and authorities cited.

We turn, then, to the question of whether the facts and all reasonable inferences therefrom, viewed in a light most favorable to plaintiff, establish a *prima facie* case.

At times, the testimony branches out in many directions, almost to the point of conflict and confusion. It appears, however, that this is due, in part, to the fact that the plaintiff, Mrs. Robertson, has a nebulous appreciation and understanding of the varying legal rights of the parties to a conditional sales contract, a bill of sale, and a chattel mortgage. Giving her the benefit of the evidence and the permissible inference therefrom most favorable to her, the following appears:

In 1943, the Club Ephrata was incorporated as a nonprofit corporation with its principal place of business in Ephrata, Washington. J. G. Dungan, one of the present defendants, was an original incorporator and was, in 1948, the presi-

dent of the club. Among its varied purposes is the right to acquire and operate a club room for the amusement and entertainment of its members and to acquire and mortgage personal property.

July, 1948, M. C. Buckley owned the vendor's interest in a conditional sales contract whereby certain personal property was sold to the club. The property constituted a portion of the furnishings in the club. Buckley's interest in the contract was purchased by H. H. Robertson (deceased husband of plaintiff executrix). The $28,000 purchase price was paid by him, through an escrow, between July 19, 1948, and February 1, 1949.

October 18, 1949, the promissory note and mortgage, upon which this action is based, were executed. Mrs. Robertson testified that her husband signed a bill of sale conveying the property to the Club Ephrata and delivered it to Clifford Moe, a director of the club and its lawyer in the transaction. Mr. Moe recalled

" . . . that Mr. Robertson signed an acknowledgement of satisfaction of the conditional sales contract [which Robertson had purchased from Buckley], and a mortgage and note was drawn up to Mr. Frank Dungan."

Whichever is the case, title to the personal property involved was vested in the Club Ephrata. There was no further manual delivery of the personal property; it was already in the possession of the club under the terms of the conditional sales contract.

When the note and mortgage were executed, H. H. Robertson was the club manager; his wife was an employee of the club. Based upon the original purchase from Buckley, Robertson claimed ownership of the note and mortgage at all times, although Frank R. Dungan was named in them as payee and mortgagee. As will be seen later, all parties involved recognized Robertson's ownership of this obligation.

Why was the promissory note made payable to Frank R. Dungan?

Mrs. Robertson testified that an inspector for the state liquor control board told them that

"He [Mr. Robertson] couldn't be the holder of the note and at the same time be the manager."

J. G. Dungan, president of the club, suggested the plan which was adopted. Robertson conveyed title to the property to the club; Frank R. Dungan was named as payee of the note and mortgage. He held them in trust for Robertson.

In May, 1950, some seven months after the note and mortgage were given, further "cloak and dagger" procedure was employed. On May 17, 1950, Frank R. Dungan gave H. H. Robertson a check for $17,251.85, the exact amount of the note. Mrs. Roberston said it

". . . was given for [sic] to show the liquor board that there was a transaction between the Club Ephrata and H. H. Robertson."

Robertson later returned this money to Dungan.

Concerning payments made on the note, Mrs. Robertson testified:

"He [J. G. Dungan] said that we will get a check from his brother Frank. His brother would get a check from the Club Ephrata showing that the Club Ephrata was buying the club."

Between December 1, 1950, and December 31, 1951, J. G. Dungan paid $2,582 on the note to the Robertsons, the last payment being made after Mr. Robertson's death.

August 1, 1950, Robertson left the club as its manager. He died December 8, 1951. Mrs. Robertson was appointed executrix of her husband's estate December 27, 1951.

January 15, 1952, Frank R. Dungan assigned the note and mortgage to H. H. Robertson (then deceased) on Mrs. Robertson's request.

*Thereafter*, the Club Ephrata made two payments to Mrs. Robertson on the note—one for three hundred dollars on March 1, 1952, and the other for one hundred dollars on April 8, 1952.

Does the testimony disclose an illegal transaction? We fail to see wherein the transaction is *malum in se*. Nothing in the transaction required the performance of acts corrupt in themselves. See *Hall v. Anderson*, 18 Wn. (2d) 625, 140

P. (2d) 266, 148· A. L. R. 760 (1943). Is it *malum prohibitum*? If it is, it is by reason of regulation No. 108 of the Washington state liquor control board, which provides, in part:

"[1] All property of any club, as well as the advantages thereof, must belong to the members. [2] Any funds advanced for the purchase or improvement of club rooms or quarters must be advanced by the membership *or upon securities or properties owned by the club* . . . [3] No club shall receive any *money* from any source whatever under any arrangement through or under which the person or persons advancing such funds . . . are to be given control or supervision over the operation of the club." (Italics and numbering ours for reference.)

The requirement contained in the first sentence of regulation No. 108, *supra*, was met when Mr. Robertson caused title to the personal property to vest in the Club Ephrata. The unpaid balance of the purchase price was "advanced . . . upon . . . properties owned by the club" when the officers of the club executed the chattel mortgage. The third sentence of the regulation has no application for two reasons: first, the club did· not receive "any money"; and second, there is no evidence that transferring title of the personal property to the club was in consideration of Mr. Robertson being "given control or supervision over the operation of the club." In fact, all inferences are to the contrary, for Mr. Robertson ceased to be club manager three months *after* the exchange of money and four months *before* any payments were made on the note.

 Rearranging a factual situation to meet the requirements of the rules and regulations of an administrative agency does not, of itself, establish fraud. Finally, there is no evidence that the liquor control board did not know the exact transaction as it is outlined in the evidence. Referring to these machinations, Mrs. Robertson testified:

"That is what the liquor board wanted."

 At this stage of the proceedings, we cannot hold, as a matter of law, that the hue and cry of fraud made by those

who engineered the transaction entitles all of them to a nonsuit at the close of plaintiff's evidence.

Does the evidence establish a *prima facie* case against J. G. Dungan and F. R. Ahlquist individually?

RCW 62.01.020 provides:

"Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

J. G. Dungan and F. R. Ahlquist signed the note as president and secretary-treasurer respectively; but as president and secretary-treasurer of what? The name of the Club Ephrata does not appear in the note except in the endorsement, which was made more than two years after the date of the note.

Considering only the note, it would appear that each of them is not exempt from personal liability, for each is described only "as filling a representative character, without disclosing his principal."

Based upon the following, however, we affirm the judgment dismissing J. G. Dungan and wife and F. R. Ahlquist and wife from this action.

■ The promissory note was in default of its periodic payments when transferred by Frank R. Dungan to Mrs. Robertson. She is not a holder in due course or a bona fide purchaser for value without notice. She had knowledge of all of the facts and participated in the entire transaction. Therefore, we consider this in the same light as an action between the original parties.

■ In *Wilson v. Kirchan*, 143 Wash. 342, 343, 255 Pac. 368 (1927), this court said:

"Under our decisions, we have committed ourselves to the doctrine that the note and mortgage, although separate instruments, are a single contract, and that reference will be made to both to determine its terms if they are not in conflict. [Citing authorities.]"

When the note and chattel mortgage are considered as "a single contract," we find one portion signed by individuals in a representative capacity for an undisclosed principal, and the other portion thereof signed by the same individuals in a representative capacity as officers of a disclosed corporate principal which had received the consideration of the transaction.

■ Under these circumstances, the *prima facie* facts are sufficient to place the instant case under the rule announced in *Hansen v. Lindell*, 14 Wn. (2d) 643, 650, 129 P. (2d) 234 (1942), wherein this court held that the addition of words such as "guardian," "trustee," "executor," "president," and similar terms, to the name of an individual in a negotiable instrument (in an action between the original parties) is sufficient to create an ambiguity. Clearly, the ambiguity may be explained by parol evidence. *State Bank of Wilbur v. Phillips*, 11 Wn. (2d) 483, 119 P. (2d) 664 (1941).

In *Taylor v. Fluharty*, 35 Idaho 705, 714, 208 Pac. 866 (1922) (cited with approval in *Hansen v. Lindell, supra*), the promissory note was signed by individuals. Their signatures disclosed that they were acting in a representative capacity. The letterhead, upon which the promissory note was written, bore the name of the corporation, but the corporate name did not appear in the body of the note. The court said:

"According to the sounder doctrine and the modern view, where one signs as agent of another, the *prima facie* presumption is that the words are merely *descriptio personae*, and therefore that the one so signing is personally bound, yet it may be shown in an action between the original parties that it was not so intended and that, in fact, the real intention was to bind the principal whose name was disclosed in the signature of his agent, *or who was well known by the payee to be the real party to be bound.* [Citing authorities.]" (Italics ours.)

■ Considering the evidence produced by Mrs. Robertson, we conclude that a *prima facie* case has not been established against J. G. Dungan and F. R. Ahlquist.

■ Mrs. Robertson paid nothing for the note and mortgage to Frank R. Dungan. Her evidence shows affirmatively

that Mr. Dungan simply held the note and mortgage for the benefit of her husband. She has failed to establish a *prima facie* case against him, so that the judgment dismissing Frank R. Dungan and wife from this action must be affirmed.

Has plaintiff established a *prima facie* case against Club Ephrata, Inc., upon the obligation involved and for foreclosure of the chattel mortgage? We believe that she has and conclude that that portion of the judgment dismissing Club Ephrata, Inc., must be reversed.

The same reasoning which supports the dismissal of J. G. Dungan and F. R. Ahlquist from this action supports the conclusion that a *prima facie* case of liability has been established against the club. *Taylor v. Fluharty, supra.*

In addition to the identification of the club as the mortgagor and signer of the chattel mortgage *and a particular identification of the promissory note involved,* the mortgage provides:

"It is also agreed that if the Mortgagor [Club Ephrata, Inc.] *shall fail to make any payment, as in the said promissory note provided* . . . [the mortgagee shall have certain rights]." (Italics ours.)

Our conclusion, that this is a *prima facie* recognition and acknowledgment by the club of its liability upon the obligation to pay, is strengthened by the fact that the club made two payments thereon in its own name *after* the note and mortgage had been transferred by Frank R. Dungan to Mrs. Robertson.

We conclude that plaintiff has established a *prima facie* case against Club Ephrata, Inc.; and, if the facts of the *prima facie* case become those established by a preponderance of the evidence upon further proceedings herein, plaintiff is entitled to proceed under the terms of the statute. RCW 61.08.110; see *Lassen v. Curtis,* 40 Wn. (2d) 82, 241 P. (2d) 210 (1952).

Finally, we cannot agree that plaintiff, by her counsel, has waived her rights against the Club Ephrata, Inc., by reason of a purported election to hold J. G. Dungan and F. R. Ahlquist personally liable instead of holding the club.

During argument, certain colloquy took place between plaintiff's counsel and the court. It is apparent, from a careful study of this portion of the record, that counsel's statement was ambiguous, qualified, and subject to misconstruction.

In addition, as we have pointed out, plaintiff has not established, as a matter of law, a *prima facie* case against Dungan and Ahlquist.

"Invoking a claimed remedy, which is not available in law, is not an election of a remedy which precludes thereafter invoking a remedy which is available in law." *Portland Ass'n of Credit Men v. Earley,* 42 Wn. (2d) 273, 279, 254 P. (2d) 758 (1953), and cases cited.

That portion of the judgment dismissing plaintiff's action against Club Ephrata, Inc., is reversed and remanded for further proceedings not inconsistent herewith. In all other respects, the decree is affirmed. Plaintiff will recover her costs from Club Ephrata, Inc., on this appeal.

HAMLEY, C. J., MALLERY, HILL, and ROSELLINI, JJ., concur.

April 24, 1956. Petition for rehearing denied.