# COFRANCESCO CONSTRUCTION CO. et al. v. SUPERIOR COMPONENTS, INC.— 371 S. W. (2d) 821.

Eastern Section. March 12, 1963.

Certiorari Denied by Supreme Court September 11, 1963.

Excell Eaves, Clarence Kolwyck, Chattanooga, for appellant.

Ben E. Caldwell, Daniel J. Woodard, Chattanooga, for appellee.

COOPER, J. This action was originally brought by the Cofrancesco Construction Company, Inc. and the Trustees of Phillips Temple C. M. E. Church in an effort to enjoin Superior Components, Inc. from enforcing a mechanic's lien for materials used in construction of a church, and to recover actual and punitive damages for the erroneous filing of said lien.

By answer and cross-bill, Superior sought enforcement of the mechanic's lien in the amount of $4,487.29, which was reduced during the trial to $4,139.63.

The material item in dispute was the cost of 25,000 feet of #1, Douglas Fir 4″ x 6″ tongue and groove roof decking. The bid of Superior, accepted by Cofrancesco, showed the price to be $1319.00. Superior insists that the correct price was $5,319.00, and that the quoted price was the result of an error in transcribing figures from its worksheet to the typed bid quotation submitted to Cofrancesco; that Cofrancesco knew of the error at the time it accepted the bid, and knowingly took advantage of it. Superior further insists that the error was discovered before the decking was used by Cofrancesco and that Superior sought a rescission of the contract and a return of the material, thus placing the parties in status

quo, but that Cofrancesco refused; that Superior sent its trucks to pick up the decking and that Cofrancesco then agreed to pay the corrected price rather than give up the decking.

The Chancellor, after hearing proof by oral testimony, found that Superior unquestionably made a mistake in submitting its bid, but was "unwilling to ascribe to Mr. Cofrancesco the astuteness of close inspection required" to "have caught the mistake before the acceptance of the bid"; "that the delay between August the 8th (the date the bid was accepted) and October the 13th and 14th, when the mistake was discovered by [Superior], put Mr. Cofrancesco in such a position that his rights were materially affected and, * * * were the offer and acceptance not required to stand firm, it would result in injury or damage to him;" that there was no promise by Cofrancesco to pay the corrected sum and that, if there were, there was no consideration to support the promise.

The Chancellor further found that Superior had furnished materials not provided for in the original contract, and that Cofrancesco was indebted to Superior for $139.63 for these materials.

The Chancellor then dismissed the suit brought by Cofrancesco Construction Company and the Church, denied Superior recovery for the $4,000.00 error, and awarded it a judgment for $139.63. Superior appealed, contending that the Chancellor erred (1) in not holding that Superior was entitled to rescind the contract as to the decking; (2) in not finding that Cofrancesco knew that the error had been made and wilfully concealed his

knowledge; and (3) in failing to award Superior a decree against Cofrancesco for the $4,000.00 in question

The record reveals that in May, 1961, the Cofrancesco Construction Company entered into a contract with the Phillips Temple C.M.E. Church to do extensive remodeling and to build an extension, including a sanctuary, at a price of $80,000.00

By August, 1961, the work on the Church had progressed to such a point that Cofrancesco decided to take bids on prefabricated wooden trusses and roof decking for the sanctuary. Cofrancesco contacted Superior and requested that it submit a bid as it was the only fabricators of wood trusses in the immediate area. At the same time, Cofrancesco contacted Graves-Buttram Company of Athens, Tennessee to bid on the roof decking, and the lumber to be used in trusses to be constructed on the job by Cofrancesco. Both suppliers were requested to rush their bids through.

Graves-Buttram Lumber Company submitted an itemized bid for lumber in the total amount of $5,745.35. In the bid was included a price of $4,015.50 for 24,420 board feet of #1 common yellow pine 4″ x 6″ tongue and groove decking. The decking was standard and could be delivered to the church site within 10 days.

Superior submitted a bid quoting a price of $4,462.01 for the fabricated trusses, and a price of $1310.00 for the 4″ x 6″ tongue and groove decking (Douglas Fir), and an alternate price of $3,371.21 for 4′ x 16′ stressed skin panels, calling attention to the fact that the skin panels would reduce onsite labor costs. The board feet of Douglas Fir decking to be furnished was not shown on the typed quotation; however, it is undisputed that it

would take in excess of 24,000 board feet to cover the sanctuary roof. This was known to Superior, and must have been known to Cofrancesco, even though it is argued to the contrary in its brief, as Cofrancesco found it necessary to estimate cost of materials and labor in making its original contract with the Church, and it is admitted that the bid for supplying the decking was not sought until after the general contract had been signed for construction of the Church.

On receipt of Superior's bid, Cofrancesco asked for 2% discount if payment was made within 10 days from billing, which was agreed to, and asked that the bid be rewritten to show the total of the two figures in the original bid and the discount, leaving off the bid for alternate decking.

The retyped bid was submitted to Cofrancesco on August 8th, and Superior was awarded the contract.

Superior proceeded to fabricate the trusses and ordered the necessary 25,000 board feet of "Select KD Doug. Fir" tongue and groove decking from the ——son Plywood and Timber Company, Everett, Washington. The decking was shipped on August 28, 1961, and was delivered directly from the freight car to the job site on either October 3rd or 4th, 1961. The actual cost of the decking, as shown by the invoice from the Shipper, was $3793.64.

On October 11th or 12th, Superior discovered that in making its bid to Cofrancesco, it had made a $4,000.00 error in transcribing figures from its worksheet to the typed bid quotation, and contacted its attorney for advice on how to proceed to have the contract rescinded or reformed to show the correct price.

In keeping with the advice of its attorney, Superior wrote Cofrancesco on October 16, 1961 explaining how the error had been made and expressing its intention to pick up the decking if Cofrancesco was not agreeable to paying the corrected price, or if Cofrancesco wished to purchase the material from another supplier. At the time Superior notified Cofrancesco of the error, the decking had not been used, and could not be used for several days as all trusses had not been delivered to the job site. The record is silent on the difficulty, if any, that Cofrancesco would encounter in securing additional Douglas Fir decking; however, Graves-Buttram testified that it could deliver the #1 yellow pine decking contained in its bid within 10 days.

Cofrancesco refused to accept the increased price and so informed Superior by letter dated October 19, 1961.

On October 23, 1961, Superior sent its trucks and men to pick up the decking from the job site. After a telephone conversation between Superior and Cofrancesco, Superior instructed its employees to leave the decking. Superior insists that Cofrancesco agreed to pay the corrected price. Cofrancesco denied this and stated that the material was left because it refused to let Superior's drivers load the decking. In any event, Cofrancesco later used the decking, and made payment in accordance with the original bid.

Several months later and after negotiations to secure payment of the additional $4,000.00 proved to be fruitless, Superior filed the materials lien in question to insure its payment from proceeds of a construction loan being secured by the Church. The present action resulted.

■ Relief from the effect of a unilateral mistake is consistently allowed where one party knows or has reason to know of the other's error and the requirements for rescission are fulfilled. Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U.S. 373, 385, 387, 20 S.Ct. 957, 961-962, 44 L.Ed. 1108; Conduit & Foundation Corp. v. Atlantic City, 2 N.J. Super. 433, 64 A. (2d) 382, 386; M. F. Kemper Const. Co. v. City of Los Angeles, 37 Cal. (2d) 696, 235 P.2d 7; Ex Parte Perusini Const. Co., 242 Ala. 632, 7 So. (2d) 576; Geremia v. Boyarsky, 107 Conn. 387, 140 A. 749; 5 Williston on Contracts, Rev. Ed., Sec. 1578; Restatement of Contracts, Sec. 503(a).

Then too, Courts have generally granted relief from the effect of a unilateral mistake, through rescission, where the mistake was material to the contract and was not the result of neglect of a legal duty, if enforcement of the contract as made would be unconscionable, and if the other party could be placed in statu quo. See Anno. 59 A.L.R. 809 and cases there cited.

The attitude of the courts toward rescission of a contract for unilateral mistake is stated in 12 Am.Jur., Contracts, Sec. 133, p. 624, as follows:

"A unilateral error, it has been said does not avoid a contract. A unilateral mistake accompanied by other facts may be sufficient, however. It is said that mistake may be a good defense where hardship amounting to injustice would be inflicted on a party by holding him to his apparent bargain and where it is unreasonable to hold him to it, although relief from a contract cannot be given by the courts merely because it is a hard or improvident one or to punish somebody for wrongdoing. Clearly, a unilateral mis-

take in the making of an agreement, of which the other party is entirely ignorant and to which he in no way contributes, will not affect the agreement or afford ·ground for its avoidance or rescission, unless it is such a mistake as goes to the substance of the agreement itself. Not only must the mistake be material to the transaction, but the person who made the mistake must show, when he applies to an equity court for a rescission of the agreement, that his mistake is not due to want of care or diligence, although the conclusion warranted by the best considered authorities is that mere neglect may not be a bar to the setting aside of the agreement unless it is such as amounts to the violation of a positive, legal duty and such as prejudiced the other party.''

█ We think the facts in this case, in the light of the above authorities, portray the classic situation where relief should be granted from the effect of a unilateral mistake.

Admittedly, a $4,000.00 error in a total bid of $9,000.00 was a material mistake.

Cofrancesco, though it did not participate in or cause Superior's mistake, had good reason to believe, in our opinion, that Superior had made a mistake in its bid quotation as (1) the bid of Buttram-Graves Lumber Company, which was under consideration at the same time as the Superior bid, quoted the cost of #1 yellow pine decking at a price more than 3 times the quoted price of Douglas Fir, normally a more expensive lumber; (2) Cofrancesco, of necessity, had figured the amount of roof decking needed and its cost in order to make its initial contract with the church; and (3) ·the

quoted price of the #1 Douglas Fir quoted by Superior was so out of proportion to its actual cost, or for that matter the cost of any lumber, that Cofrancesco, as an experienced contracting firm, should have been put on notice that something was wrong.

In Ex Parte Perusini Construction Co., 242 Ala. 632, 7 So. (2d) 576, the Court stated:

"If one of the parties through mistake, names a consideration that is out of all proportion to the value of the subject of negotiation and the other party realizing that a mistake must have been committed, takes advantage of it and refuses to let the mistake be corrected when it is discovered, he cannot under these conditions claim an enforceable contract. *Where there is a mistake that on its face is so palpable as to place a person of reasonable intelligence upon his guard, there is not a meeting of the minds of the parties, and consequently there can be no contract.* 6 R.C.L. page 623, section 42; 12 Amer.Jur. 624, section 133, and cases there cited." (emphasis supplied).

See also Robert Gordon Inc. v. Ingersoll-Rand, Co., 7 Cir., 117 F. (2d) 654, and Restatement of Contracts, Sec. 503, Comment (a).

But whether or not Cofrancesco knew or should have known of Superior's mistake at the time it entered into the contract, Cofrancesco was notified of the mistake before it changed its position in any way and the parties could be placed in statu quo without prejudice to Cofrancesco other than the loss of an unconscionable bargain.

In Geremia v. Boyarsky, 107 Conn. 387, 140 A. 749, the court considered, in our opinion, facts remarkably

similar to the present case. In that case, the defendants submitted a bid covering the carpenter work and painting on a house being constructed by the plaintiff. In making the bid the defendants made a $760.00 error in addition and bid $1,450.00 instead of $2,210.40. That evening the defendants discovered their mistake and notified the plaintiff, offering to go forward with the work according to the corrected bid, or to do the work as low as any responsible contractor if less than $2,210.40. Plaintiff refused their offer, and insisted that they complete the work at the contract price. Defendants refused and the plaintiff thereafter let the contract to another contractor for $2375.00. In holding that it would be inequitable to award the plaintiff damages for breach of the contract, and that it should be rescinded, the Court stated:

"Though the mistake was not induced by the conduct of the other party, equity will grant relief, if the latter, when he becomes aware of the mistake, seeks to take an unconscionable advantage of it. Lieberum v. Nussenbaum, 94 Conn. 276, 108 A. 662. The plaintiff, though he is found by the court not to have participated in the mistake, had good reason to believe that one had been made before the contract was signed, was notified of the mistake by the defendants before he had changed his position in any respect, and sought to take unfair advantage of it by insisting upon the performance of the contract at a price upon which the minds of the parties had never met. When the contract is still executory and the parties can be put in statu quo, one party to the contract will not be permitted to obtain an

unconscionable advantage merely because the mistake is unilateral.''

Cofrancesco insists that ''the principle involved in the present case is almost identical with that involved in General Electric Supply Corp. v. Republic Construction Corp., 201 Or. 690, 272 P. (2d) 201, wherein rescission for unilateral mistake was not allowed, and a judgment in favor of the supplier was reversed. We agree. However there is a very material difference in the factual situation. In the General Electric case the parties could not be placed in statu quo at the time the contractor was notified of the unilateral mistake made by General Electric as the appliances furnished under the contract had been installed, thus depriving the contractor of the opportunity to accept bids from other suppliers which were much lower than General Electric's corrected bid and were competitive with General Electric's erroneous bid.

For reasons above stated, Superior's assignments of error are sustained.

The decree of the Special Chancellor is modified so as to allow recovery of $4,000.00, representing the error in the original bid, in addition to the $139.63, heretofore allowed by the Chancellor as the cost of materials furnished in excess of those called for in the contract. This cause is remanded to the Chancery Court at Chattanooga, Tennessee for the disbursement of funds in that Court in accordance with the decree, as modified. Costs of the appeal are adjudged against Cofrancesco Construction Company, Inc.

McAmis, P. J., and Taylor, Special Judge, concur.