**REED'S PHOTO MART, Appellant,**

v.

**The MONARCH MARKING SYSTEM COMPANY, Appellee.**

No. 6169.

Court of Civil Appeals of Texas, El Paso.

Dec. 22, 1971.

Rehearing Denied Jan. 26, 1972.

Texas S. Ward, El Paso, for appellant.

Colbert N. Coldwell, El Paso, for appellee.

OPINION

PRESLAR, Justice.

Plaintiff-Appellee, Monarch Marking System Company, brought suit against Reed's Photo Mart, Inc., Defendant-Appellant, for the price of 4,000,000 small, gummed, pricing labels ordered by Appel-

lant from Appellee. Judgment was rendered for Plaintiff in the amount of $2,860.00, plus interest from January 1, 1969, and $750.00 attorney's fees, plus interest from date of the judgment. We reverse and remand the case.

The record reflects that Appellant is a small photography store, dealing in photographic supplies and camera equipment in El Paso, Texas. Appellee is a nationwide manufacturer and supplier of pricing and product identification labels. Appellant had been doing business with Appellee since the 1950s, individually, and as the present corporation since 1961 but Appellee's present salesman, Richard E. Cornelius, began working for Appellee on January 1, 1968, and was responsible for an area including El Paso, New Mexico, and the southern part of Colorado. Mr. Cornelius received a purchase order from Appellant on February 26, 1968. The order listed Appellant's request for five different types of labels, four of the five ordered categories specifying "2M" while the fifth specified "4MM", and it is this fifth item which is the subject of this suit. The record reflects a capital "M" is the Roman numeral designation for 1,000, and is so used and understood in the industry. Thus, the purchase order was for four (4) types of labels, 2,000 of each type, while the fifth (5) category was for 4,000 by Appellant's intentions or 4,000,000 as understood by Appellee. There is no question but that Appellant intended to order 4,000 labels, and that his use of "MM" was a mistake. Appellee obtained a jury finding that in the label industry, "MM" was used and understood to mean a million. Mr. Cornelius transferred the information from the purchase order to a company order form and forwarded it to his company's California factory. In doing that, he changed the "4MM" designation to "4,000 M", and he changed the Appellant's requested method of shipment from "Parcel Post" to "best way", and the instructions to ship "at once" to "as soon as possible". On April 10, 1968, a truck arrived at Appellant's store with seven large packages from Appellee. Appellant refused to accept delivery, and immediately notified Mr. Cornelius by telephone that "a terrible mistake had been made". The purchase price of 4,000 labels was some $13.00, while the price of 4,000,000 was $2,680.00. As Appellant expresses it—he had expected a small carton to arrive by parcel post, but instead, a truck drove up to his store wanting to unload "a truck load of cartons".

We are thus confronted with the question of whether there exists such circumstances as permits recission of a contract for a unilateral mistake.

By its issue number 3, the Court inquired whether Appellee knew the order relating to "4MM" was an error. Appellant objected to this issue on the basis that the inquiry should be whether Appellee knew, or should have known, that the order was an error. A requested special issue in that form was presented but refused. There is ample evidence to warrent the submission of the issue; the question is whether the circumstances are such as to entitle Appellant to equitable relief. Most of the Texas cases allowing relief for a unilateral mistake involve bids. Taylor, etc. v. Arlington Ind. School District, 160 Tex. 617, 335 S.W.2d 371 (1960) is such a case, and there the conditions under which equitable relief will be granted against a unilateral mistake were listed as:

(1) The mistake is of so great a consequence that to enforce the contract as made would be unconscionable;

(2) The mistake relates to a material feature of the contract;

(3) The mistake must have been made regardless of the exercise of ordinary care; and,

(4) The parties can be placed in status quo in the equity sense, i. e., recission must not result in prejudice to the other party except for the loss of his bargain.

**358**

The Court also said:

"There may be other circumstances which will govern or influence the extension of relief, such as the acts and extent of knowledge of the parties." (Citing authorities)

Actual knowledge was inquired about by issue 3 in the case before us. It is an element of Appellant's case for equitable relief. We are of the opinion that Appellant was entitled to an inquiry as to whether Appellee should have known of the error. Actual knowledge entitles relief. Knowledge is the test. Why not imputed or constructive knowledge? What should have been known because of the facts and circumstances, would seem to be a proper inquiry in this case.

It is well settled that a party need not be actually aware of a certain fact, but that knowledge may be imputed or constructive. Williston on Contracts, 3rd Ed., Sec. 94, p. 343, states that:

"And the same principle is applicable in any case where the offeree should know that the terms of the offer are unintended or misunderstood by the offeror. The offeree will not be permitted to snap up an offer that is too good to be true."

Corbin on Contracts, Volume 3 (1960) also states:

"If, before acceptance, the offeree knows or has reason to know, that a material error has been made, he is seldom mean enough to accept; and if he does accept, the Courts have no difficulty in throwing him out. He is not permitted 'to snap up' such an offer and profit thereby." (Citing numerous authorities).

The Courts are fairly uniform in their treatment of cases involving a mistaken bid. As stated by the Court in Moffett, Hodgkins & Clark Co. v. City of Rochester, 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1108 (1900):

"If the defendants are correct in their contention there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape * * * The defendants' position admits of no compromise, no exception, no middle ground."

See also Cofrancesco Construction Co. et al. v. Superior Components, Inc., 52 Tenn. App. 88, 371 S.W.2d 821; West v. United States, D.C., 143 F.Supp. 167; State Highway Commission et al. v. Canion, 250 S. W.2d 439 (Tex.Civ.App., Ref. n. r. e.); Taylor and Son, Inc. v. Arlington Independent School District, 160 Tex. 617, 335 S. W.2d 371 (1960).

In Chernick v. United States, 372 F.2d 492, 178 Ct.Cl. 498, the Court stated:

"We are of the opinion that under the circumstances, the contracting officer, if he did not know, should have known that the bid was erroneous. It is common knowledge that the most ordinary kind of arithmetical or clerical mistake involves the misplacing of a decimal. Any instance of a monetary figure one tenth or ten times what it might naturally be expected to be, is a warning flag."

In the case at bar, we have an order for four (4) types of labels, 2,000 of each, and a fifth type for 4,000,000.

While the bid cases are distinguishable in that the parties are able to be placed in the status quo, we feel the principle of such applies in the present case. No loss had been suffered by Appellee at the time the erroneous order was received—when the knowledge test applied. The Texas Supreme Court in dealing with the principle of equitable estoppel in Champlin Oil and Refining Company v. M. B. Chastain, 403 S.W.2d 376, stated:

"It has been determined by the Texas authority that imputed actual notice car-

ries with it the same legal consequences as conscious knowledge." Citing Hexter v. Pratt, Tex.Com.App., 10 S.W.2d 692. See also Woodward et al. v. Ortiz et al., 150 Tex. 75, 237 S.W.2d 286.

Numerous circumstances are woven throughout the case at bar that point to the conclusion that at the very least, the Appellant's order was amiss, and at the most, that a grievous error had been made. The Appellant's order specified shipment by parcel post. The order, as filled, was shipped in seven cartons with a total weight of 622 pounds. Appellee's salesman, Cornelius, testified upon being questioned as to his reason for changing parcel post to "best way"—

"Q. So at the time you received that order, you knew it was impossible to send four million labels by parcel post, didn't you?"

"A. It isn't impossible but it is certainly impractical. Yes."

Appellant's order specified on its face "—we reserve the right to refuse merchandise not in strict accordance with this order." Cornelius testified that he knew that it would be uneconomical for a customer if his company were to break down a 622 pound shipment into 20 pound cartons and ship it by parcel post, and that as a practical matter, his company did not do it. He was well aware of the discrepancy in the quantity and the parcel post shipping instructions for he testified:

"I felt I was acting in their best interests."

He testified that he had never received an order as large as four million labels of one catalogue number, and that the largest order he had ever received before February 22, 1968, was one for a million labels, these not to be shipped at one time but in intervals of several months. In previous transactions with Appellee, Appellant had never ordered any quantity remotely near the figure of one million, and such dealings over a period of many years were an indication to Appellee of the size of Appellant's business. Appellee has a policy of checking orders received from their salesmen by going into the records of what a customer has ordered in the past if "there is some discrepancy", and the original of Appellant's order went to the factory with the order Cornelius prepared. Mr. Reed, President of Reed's Photo Mart, testified that he had been doing business with Appellee as an individual since "in the 50s" and as a Corporation since 1961, and that he had never ordered over 4,000 labels at any one time of any one item. Neither he, nor his employees, had any knowledge of "MM" meaning one million, but used it in the business as meaning milliammeter to designate the size of photo lens. The explanation of the error was that the order was partially made up, there were interruptions to wait on customers in the photo shop, and later in the day, the "4MM" item was added to the order. It was an "inadvertency", "a mistake", and the intention was to order four thousand.

A number of cases can be found, other than the bid cases, where Texas Courts have allowed relief for unilateral mistakes, due to peculiar circumstances of each case. Edwards v. Trinity & B. V. Ry. Co., Tex. Civ.App., 118 S.W. 572 (1909), writ of error refused in 104 Tex. 686; International Life Ins. Co. v. Stuart, Tex.Civ.App., 201 S.W. 1088 (1918); Finks v. Hollis, 38 Tex.Civ.App. 23, 85 S.W. 463 (1905); Horan v. Long, 11 Tex. 230 (1853); Barteldes Seed Co. v. Bennett-Sims Mill & Elevator Co., Tex.Civ.App., 161 S.W. 399 (1913). However, none of these cases have a factual situation like this case.

Also, this Court is well aware that the previously described factual situation does not precisely fit any of a number of equitable doctrines. However, as the Court stated in Cox v. Hall, 54 Mont. 154, 168 P. 519, p. 521:

"Courts of equity are not bound by cast-iron rules, but are governed by rules which are flexible and adapt themselves

to particular exigencies, so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other."

Further, a mere act of unilateral negligence will not always defeat the exercise of equitable relief which a Court may grant. As the Court stated in Warren et al. v. Osborne et al., Tex.Civ.App., 154 S.W.2d 944 (Ref. want merit):

"* * * such alleged negligence as here is excusable and will not defeat the interposition of equity to carry out the mutual intent and prevent a gross injustice. (Citing numerous authorities).

See also, Taylor v. Arlington School District (Supra) as regards the degree of negligence. As indicated, the record is replete with ample evidence to justify submission of an issue to the jury on whether or not Appellee knew, or should have known, that Appellant's order was in error. The fact that Appellee's salesman had been employed for a short period of time neither negates any type of liability nor relieves Appellee from responsibility for any actions taken by the agent.

This Court, not blessed with the wisdom of Solomon, and realizing there is scant Texas law on this particular type of factual situation, is nevertheless convinced that the trial Court erred in refusing to submit Appellant's aforementioned issue for jury consideration.

The judgment is reversed and the cause remanded to the trial Court.

RAMSEY, Chief Justice (dissenting).

I respectfully dissent. The majority opinion bases it's reversal on the failure of the trial Court to submit an issue as to whether or not the Appellee "should have known" that the order was in error. This is not an ultimate fact issue. Assuming, for the sake of argument, that such issue was submitted and a favorable answer obtained for Appellant. Would Appellant then be entitled to equitable recission? Obviously not. The jury found that the Appellee did not know of the mistake. Knowledge could be a basis for avoidance relating to unconscionable conduct. Barteldes Seed Co. v. Bennett-Sims Mill & Elevator Co., Tex.Civ.App., 161 S.W. 399 (n. w. h.). In the absence of knowledge, there could be no overreaching.

As a general rule, unilateral mistake does not constitute grounds for avoidance of a contract. Earp v. First State Bank of Abilene, Tex.Civ.App., 356 S.W.2d 178 (Ref. n.r.e.); 13 Tex.Jur.2d Sec. 252, p. 476 and Sec. 256, pp. 480, 481. Taylor & Son, Inc. v. Arlington Independent School District, cited in the majority opinion, clearly defines the necessary elements for granting equitable relief for unilateral mistake. The fourth element is lacking. The mistake involved here, whether through inadvertence, negligence or misunderstanding is due to the act of the Appellant. The fact situation simply does not warrant equitable relief.

I would affirm the judgment of the trial Court.