PUGET SOUND NATIONAL BANK, *Appellant*, v. G. MICHAEL
SELIVANOFF et al., *Defendants*, CAROL SELIVANOFF,
*Respondent*.

*Eisenhower, Carlson, Newlands, Reha, Elliott & Henriot*
and *Ronald A. Roberts*, for appellant.

*Bogle, Gates, Dobrin, Wakefield & Long, Thomas L. Mor-
row* and *Carl Mundt*, for respondent.

HOROWITZ, J.—Plaintiff Puget Sound National Bank
brought an action against defendants Selivanoff to recover
on a guaranty executed by each under the circumstances
next set forth. Judgment was entered against G. Michael
Selivanoff, individually, and against the marital community
composed of the Selivanoffs, but Carol Selivanoff in her
individual capacity was dismissed. The bank appeals the
judgment of dismissal.

G. Michael Selivanoff and Carol Selivanoff were husband
and wife at the time of the transactions involved. They
were the sole stockholders of Bigstone Corporation, Mr.

Selivanoff being president and his wife, Carol, being secretary. In August 1969 defendant husband, as president and general manager of the corporation, conferred with plaintiff bank about the corporation borrowing money from the bank. The bank informed the husband it would lend money to the corporation if both the husband and wife, in their individual capacities, executed both a guaranty agreement and a guarantor's acknowledgment of independent consideration. The guaranty form reads as follows:

> FOR VALUE RECEIVED the undersigned hereinafter singly and collectively referred to as guarantor hereby guarantees payment of any and all indebtedness, however created or evidenced, now owing or due or which may hereafter be owing or become due from Bigstone Corporation hereinafter singly and collectively referred to as borrower to THE PUGET SOUND NATIONAL BANK OF TACOMA, or its assigns, to the extent at any one time of ** Any and All ** Dollars ($............), and in addition thereto all accrued interest upon such indebtedness, and waive notice of any and all indebtedness of any kind covered by the same. This is a several guaranty on the part of each guarantor of every dollar of said indebtedness, whether said indebtedness be otherwise guaranteed or secured or not. This guaranty is a continuing absolute and unconditional guaranty and shall continue in full force and effect until written notice from guarantor of the discontinuance thereof shall be received by THE PUGET SOUND NATIONAL BANK OF TACOMA, and until the payment of all liabilities incurred prior to receiving such notice.

The acknowledgment of independent consideration form reads:

> The undersigned have been informed by the Bank that the execution of this acknowledgment and the attached guaranty will be considered by the Bank as an offer by the undersigned and that such offer is a condition precedent to the forebearance by the Bank to assert any one or more of its legal remedies against Bigstone Corporation the Borrower named in the attached guaranty; that the Bank would not consider the extension of any further credit nor any additional time to said Borrower, except for the promise by the undersigned, based upon such

independent consideration, to pay the indebtedness of said Borrower as provided in the attached guaranty, in the event the Bank determines to accept the offer by making concessions to said Borrower.

The bank delivered the instruments to the husband, and he took them home so that he and his wife could sign them. When Mr. Selivanoff requested his wife to sign the instruments, she refused lest her separate property be subjected to potential liability under the guaranty. Her husband then assured her that if she signed her name with the abbreviation "Sec." after her name, the corporation would be liable on the guaranty and she would not be. Thereupon, the husband and wife each signed each instrument, the husband affixing the abbreviation "Pres." after his signature, and the wife affixing the abbreviation "Sec." after her signature. The husband then delivered the instruments so signed to the bank. The bank accepted the instruments without further inquiry or question. Subsequently, relying on the instruments, the bank made several loans to the Bigstone Corporation. The corporation defaulted on the last loan. The bank then demanded that each of the Selivanoffs make good the default under the guaranty. They refused. The bank then sued them to recover on the guaranty.

During trial defendants discovered that, without their knowledge, the bank had blotted out the abbreviations "Pres." and "Sec." following the signatures on each of the instruments. Defendants then contended the alterations were material and provided defendants with an additional defense to the action. The court entered judgment for the bank against the husband and the Selivanoff marital community, but dismissed the bank's claim against the wife individually.

The bank on appeal assigns error to finding of fact No. 7 and various conclusions of law. Finding No. 7 is not a critical finding. For purposes of this opinion, we assume that Carol Selivanoff is charged with knowledge of the contents of the two instruments. The controlling question is whether the court erred in admitting parol evidence that

Carol Selivanoff's signature was not intended to bind her individually so as to enable the bank to reach her separate property.

We hold the parol evidence received was properly admitted to explain the ambiguous nature of the wife's signature on the guaranty instruments and thus establish the wife's defense to the bank's action to enforce its guaranty against her.

■ Case law generally is divided on whether ambiguity explainable by parol exists when a signature on a contract is followed by a word or abbreviation which may be either descriptive or indicative of representative capacity in which the signatory has signed the contract. Annot., 33 A.L.R.2d 960, 990-92 (1954); 32-39 A.L.R.2d LCS 194 (1969); Annot., 113 A.L.R. 1364 (1938). Washington follows the rule the signature in such a case is an ambiguous one explainable by parol. *Robertson v. Club Ephrata*, 48 Wn.2d 285, 293 P.2d 752 (1956); *Hansen v. Lindell*, 14 Wn.2d 643, 129 P.2d 234 (1942). In *Hansen v. Lindell, supra*, a note was payable to "Winifred Lundberg, Guardian of Helen Patricia Lundberg." The question was raised whether the addition of the title to the name created an ambiguity explainable by parol evidence. The court said:

> Although cases may be found in other jurisdictions in which the courts have held that the addition of words such as "guardian," "trustee," "executor," "president," and similar terms, does not create an ambiguity, we believe the better rule is expressed by those cases which hold an ambiguity to exist.

*Hansen v. Lindell, supra* at 650.

Plaintiff contends no ambiguity exists. It particularly relies on *Toon v. McCaw*, 74 Wash. 335, 133 P. 469 (1913) (a note case); *Gavazza v. Plummer*, 53 Wash. 14, 101 P. 370 (1909); *Daniel v. Glidden*, 38 Wash. 556, 80 P. 811 (1905). The cases are distinguishable. The *Toon* and *Daniel* cases were distinguished in *Hansen v. Lindell, supra. Gavazza v. Plummer, supra*, was not discussed, but it too is distinguishable. There, liability was imposed on a signatory

based upon the form of the instrument; however, it does not appear from the opinion there was any claim that ambiguity existed requiring explanation by parol testimony; nor does it appear that parol testimony was offered.

The court below concluded the guaranty instruments "were ambiguous on their face because of the affixations of 'Pres.' and 'Sec.' following the names" of the respective defendants. Conclusion of law No. 1. The court further held "[t]hat the plaintiff . . . was put on notice of the ambiguity indicated by the affixations 'Pres.' and 'Sec.' " on each instrument "and should have inquired of the defendant Carol Selivanoff as to her intent and agreement with them in signing said documents." Conclusion of law No. 5. The court accordingly held parol evidence was admissible to explain the ambiguity "to determine the nature of the agreement between the parties." Conclusion of law No. 2.

The uncertainty created by the apparent conflict between the contents of the guaranty instruments and the form of the wife's signatures was removed by parol testimony showing how the abbreviation "Sec." came to be affixed to the wife's signatures. The evidence showed the wife intended to affix her signature solely in her representative capacity as secretary of Bigstone Corporation. She was induced to do so in that manner by her husband after she refused to affix her signature lest her separate property be subjected to the guaranty. The evidence also showed the bank, through its personnel, including its loan officer Mr. White, was put on notice by the form of the signatures that they did not comply with the bank requirements. The fact that the bank later secretly blotted out the abbreviations "Pres." and "Sec." following the signatures of the husband and wife confirms this conclusion. Notwithstanding the warning given by the form of the signatures, the bank made no objection thereto and made no inquiry of the wife in person, by telephone, or by letter to explain the reason for the form of her signature. Had the bank made such inquiry, it could have quickly ascertained the true facts. Under these circumstances, it must be held to have con-

structive notice of those facts discoverable by reasonable inquiry and of the existence of which it was put on notice. *See Fricke v. Belz*, 237 Mo. App. 861, 177 S.W.2d 702 (1944). *See also Hudson Structural Steel Co. v. Smith & Rumery Co.*, 110 Me. 123, 85 A. 384 (1912).

■ The legal question presented is whether the bank, being charged with knowledge of the facts of which it was put on notice, may nevertheless enforce the guaranty agreement against the wife. We hold it may not do so. The rule applied in a variety of factual patterns is that a defendant is not liable under a contract executed by him as a result of his material unilateral mistake of fact or law if the plaintiff knows of the defendant's mistake. *Potucek v. Cordeleria Lourdes*, 310 F.2d 527 (10th Cir. 1962), *cert. denied*, 372 U.S. 930, 9 L. Ed. 2d 734, 83 S. Ct. 875 (1963); *Geremia v. Boyarsky*, 107 Conn. 387, 140 A. 749 (1928); *Peterson v. First Nat'l Bank*, 162 Minn. 369, 203 N.W. 53, 42 A.L.R. 1185 (1925); *Rushlight Automatic Sprinkler Co. v. Portland*, 189 Ore. 194, 219 P.2d 732 (1950); *Cofrancesco Constr. Co. v. Superior Components, Inc.*, 52 Tenn. App. 88, 371 S.W.2d 821 (1963). *See Haviland v. Willets*, 141 N.Y. 35, 35 N.E. 958 (1894). The same rule applies when the plaintiff is charged with knowledge of the defendant's mistake. *Hester v. New Amsterdam Cas. Co.*, 268 F. Supp. 623 (D.S.C. 1967); *C.N. Monroe Mfg. Co. v. United States*, 143 F. Supp. 449 (E.D. Mich. 1956); *Ex Parte Perusini Constr. Co.*, 242 Ala. 632, 7 So. 2d 576 (1942); *Hudson Structural Steel Co. v. Smith & Rumery Co., supra. See generally* Annot., 59 A.L.R. 809, 815-17 (1929); 3 A. Corbin, *Contracts* §§ 610, 616, 619 (1960); Restatement of Contracts §§ 71, 472(1)(b), 503, comment *a*, 505 (1932); L. Simpson, *Contracts* § 42, at 66 (2d ed. 1965); 9 J. Wigmore, *Evidence* § 2416(2) (1940); 13 S. Williston, *Contracts* §§ 1573, 1578, 1582, 1583, 1584, 1597, at 603 (3d ed. 1970).

The bank contends that if the wife signed mistakenly, the mistake was a unilateral one induced by her husband and that the bank should have no responsibility therefor. The bank here, however, is not held responsible because of

what the husband did. The basis for its responsibility is that it ignored the true facts reasonably ascertainable by it after it was put on notice by the form of the wife's signatures that the wife did not intend to bind herself individually and thereby place her separate property behind the guaranty.

The conclusion reached makes it unnecessary to consider whether the bank's action in secretly blotting out the abbreviations "Pres." and "Sec." after the defendants' signatures also provides a defense.

The judgment is affirmed.

JAMES and WILLIAMS, JJ., concur.

Petition for rehearing denied October 29, 1973.

Review denied by Supreme Court December 14, 1973.

[No. 1566-1. Division One. September 17, 1973.]