[No. 36821-4-I.  Division One.  August 19, 1996.]

WILSON COURT LIMITED PARTNERSHIP, *Respondent*, v. TONY MARONI'S, INC., ET AL., *Appellants*.

*Joseph C. Brown* and *Montgomery, Purdue, Blankinship & Austin*, for appellants.

*Bradley L. Brigham* and *Jameson, Babbit, Stites & Lombard*, for respondent.

BAKER, C.J. — Anthony Riviera appeals a summary judgment finding him personally liable on a guaranty even though he added the title "President" to his signature. Wilson Court Limited Partnership rented commercial space to Riviera's company and asked him to sign a guaranty of the company's lease. The guaranty did not indicate who was to be bound. We must determine whether the parties intended to personally bind Riviera. We affirm, holding that while the document and signature are ambiguous, the purposes and circumstances surrounding the guaranty can only lead to the conclusion that the parties intended to bind Riviera personally.

## FACTS

Riviera is president of Tony Maroni's, Inc., a pizza

franchise. Tony Maroni's entered into a five-year lease agreement with lessor Wilson Court Limited Partnership. Riviera signed a guaranty of Tony Maroni's full performance under the lease, but added the title "President" after his signature. The guaranty did not indicate whether the signer was obligating himself or the company he represented, referring to the guarantor only as "the undersigned":

> [T]he undersigned hereby guarantees to the Landlord . . . the full performance and observance of all covenants, conditions and agreements therein provided to be performed and observed by the Tenant, its successors and assigns . . . .
>
>  . . . .
>
> GUARANTOR:
>
> By: /s/ Anthony L. Riviera President

While Wilson Court admitted an internal memorandum showing its subjective intent to secure Riviera's personal guaranty, it did not allege that it communicated its intentions to Riviera. In his affidavit, Riviera testified that the parties never discussed whether he would be personally liable under the guaranty.

A year later, Tony Maroni's filed for bankruptcy and assigned its rights under the lease to M & R Foods, Inc. Riviera is also president of M & R. Tony Maroni's and M & R defaulted on the lease. Wilson Court brought an unlawful detainer action seeking possession of the premises and damages, including back rent. The trial court awarded partial summary judgment against M & R and against Riviera in his personal capacity. The court entered final summary judgment when Wilson Court found a new tenant and determined the amount of its damages.

## DISCUSSION

Riviera contends that the trial court erred when it awarded summary judgment against him. A party is

entitled to summary judgment when (1) there is no genuine issue of material fact, (2) reasonable persons could reach only one conclusion, and (3) the moving party is entitled to judgment as a matter of law.[1] Riviera agrees with the trial court's determination that there was no genuine issue of material fact, but argues that when the evidence is viewed in the light most favorable to him, the only reasonable inference one can draw is that no contract was formed. We disagree.

■ We must decide whether using a representative title prevents a signer from becoming personally bound under a guaranty where there is no evidence of intent on the face of the instrument or in the parties' interactions, but the only possible purpose of the guaranty is to provide a personal surety. When the signer's identity is otherwise clear from the face of the contract, the prima facie presumption is that titles appearing after a signature are merely personal descriptors, and do not prevent personal liability from attaching.[2] But where the apparent conflict between a descriptor and something else on the face of an instrument raises doubts about which party is bound, Washington courts consistently hold that the form of the signature can raise an ambiguity resolvable by parol evidence.[3] In this case the language used in the guaranty does not identify the party it binds. The form of Riviera's signature cannot alone resolve the ambiguity, and so we turn to the rules of contract construction.

■ When faced with an ambiguity, we must determine the parties' intent from the full context of the document. We glean the parties' intent not only from their interactions and from the contract language, but also from

[1]*Tanner Elec. Co-op. v. Puget Sound Power & Light Co.*, 128 Wn.2d 656, 668, 911 P.2d 1301 (1996).

[2]*Robertson v. Club Ephrata*, 48 Wn.2d 285, 295, 293 P.2d 752 (1956).

[3]*E.g. Griffin v. Union Sav. & Trust Co.*, 86 Wash. 605, 609-10, 150 P. 1128 (1915).

an examination of the purposes behind the document.[4] Riviera contends that the lack of evidence of mutual intent in the language of the document or in the interactions of the parties can only mean that a contract was not formed. But the very nature of a guaranty is to undertake primary obligation for the performance of another.[5] Because Tony Maroni's could not guarantee its own obligation to Wilson Court, the very act of creating a guaranty is evidence of the parties' mutual intent to bind Riviera personally. The trial court did not err when it found that an intent to personally bind Riviera was the only permissible inference from the evidence.

We distinguish *Puget Sound Nat'l Bank v. Selivanoff*,[6] in which we held that a guarantor was not personally liable where her use of a descriptor put the obligee bank on inquiry notice that she acted under a unilateral mistake of law. There, the form of Mrs. Selivanoff's signature created an apparent conflict with the rest of the document. Parol evidence showed that Mrs. Selivanoff added "Sec[retary]" to her signature because she believed it would shield her separate property from collection, while allowing recovery against community property. Because the bank failed to inquire, Mrs. Selivanoff was relieved of personal liability under the contract.[7] In this case, the descriptor did not create an apparent conflict within the document because the remaining language did not hint at the identity of the obligor. Wilson Court therefore had no reason to suspect that Riviera's signature indicated a contrary intent.

## ATTORNEY FEES

The lease provides for attorney fees to the prevailing

---

[4]*See Berg v. Hudesman*, 115 Wn.2d 657, 667-68, 801 P.2d 222 (1990).

[5]*Robey v. Walton Lumber Co.*, 17 Wn.2d 242, 255, 135 P.2d 95, 145 A.L.R. 924 (1943).

[6]9 Wn. App. 676, 514 P.2d 175, *review denied*, 83 Wn.2d 1004 (1973).

[7]*Selivanoff*, 9 Wn. App. at 676-82.

party. We therefore affirm the trial court's award of trial level attorney fees to Wilson Court. Both parties also request appellate fees. Because we affirm, we award appellate fees to Wilson Court upon its compliance with RAP 18.1.

COLEMAN and KENNEDY, JJ., concur.

Reconsideration denied September 18, 1996.

Review granted at 131 Wn.2d 1008 (1997).