## SERVICE STAMP COMPANY v. GEORGE H. KETCHEN.

Eastern Section. February 23, 1929.

Petition for Certiorari denied by Supreme Court, October 19, 1929.

Dan J. Kelly, of Knoxville, for plaintiff in error.
J. Pike Powers, Jr., of Knoxville, for defendant in error.

OWEN, J. George H. Ketchen, plaintiff below, recovered a judgment against the defendant for $44.16. The suit originated before a Justice of the Peace. The defendant company is a trade name for one John Clancy, in the rubber stamp business in Knoxville, Tennessee. The plaintiff conducts a printing shop in said city. The plaintiff, at the defendant's request, had been supplying the defendant without charge, certain type which the defendant used in making rubber stamps. The plaintiff had furnished the defendant type without charge as many as from three to five hundred times.

The defendant sent a messenger boy to plaintiff's place of business and asked the plaintiff for certain type; while the messenger boy was in plaintiff's place of business he meddled or interfered with plaintiff's press while the plaintiff was in another part of the building. The press was damaged to the extent claimed by the plaintiff. When the plaintiff realized that the press had been broken he telephoned the defendant to come and see what defendant's messenger boy had done; the defendant replied that he could not come at that time but asked plaintiff to wire for any necessary parts and repair the press and the defendant would pay for said repairs. After repeated promises on the part of defendant to pay the bill and defendant's failing to pay, this suit was instituted.

The defendant seasonably filed a motion for a new trial which was overruled, he perfected an appeal and has assigned four errors. By these four errors it is insisted that the promise of the defendant was, without any consideration, sufficient in law to bind the defendant and that the messenger boy of the defendant was acting beyond his authority at the time he damaged plaintiff's press. The amount involved in this case is under $50. The Justice of the Peace, before whom the suit was instituted and first tried, had equitable jurisdiction to try this cause likewise, the circuit court and this court has equitable jurisdiction.

We are of the opinion that the contract to make the repairs should be sustained. The defendant's servant was guilty of trespassing but the defendant wanted to buy his peace with the plaintiff. He wanted to continue his relationship with the plaintiff. The plaintiff set the type without charge for the defendant both before and after the accident. The defendant is now estopped to deny that he will pay for the repairs and parts as he had the plaintiff to telegraph for the repairs and parts. The compromise of a claim is a sufficient consideration for a promise to pay money. Plaintiff's damages were compromised on an agreement that the defendant would pay just what it would cost to repair the press.

"Regardless of whether suit is pending in regard to the claim, the settlement thereof is sufficient consideration for a promise because of the detriment to the party consenting to the compromise arising from the alteration of his position. There is authority to the effect that a compromise cannot be sufficient consideration for a promise where there has been no dispute between the parties or where the disputed claim is legally groundless. If this statement is to be understood as requiring the actual existence of an enforcible liability, it would seem to be opposed to the weight of authority, according to which the claim need merely be a doubtful one. If it is, the actual rights of the parties, whatever they may be, do not affect the question. The fact that the promisor is mistaken in regard to his liability is immaterial. . . . It is not a defense that the claim could not have been maintained if suit or action had been brought upon it or that the parties were mistaken as to the law; for if it is, it would follow that contracts made by parties settling their own disputes would at last be made to stand or fall according to the opinion of the court as to how the law would have determined it. If the compromise of the parties is made to depend on the question whether the parties have so settled the dispute as the law would have done, then it may be truly said that a compromise is an unavailing, idle act which questions even the power of the parties to bind themselves. . . . The claimant must honestly suppose or believe he has a cause of action. . . . It seems that even under this view, all that is necessary is that there should be a claim concerning which the parties may bona fide and upon reasonable grounds disagree. The compromise of such a claim in good faith is a good consideration to pay money in settlement thereof, and when an action is brought upon such promise, it is no defense to say that the claim was not in fact a valid one and that the parties were mistaken either as to the law or the facts."

As far back as 1814 the law on this subject was settled by the Supreme Court of Tennessee, in the case of Lewis v. Cooper and Flynn, reported in Cooke, page 467 (354). In that case Lewis sold

a negro girl named Dilce to Samuel McAdam. The deed provided "which said negro I do warrant and defend unto said McAdam." Lewis brought a suit to set aside a judgment, which one Flynn recovered for the use of Cooper. It seems that Dilce, after the sale, had several children, one of them called Jane, who was sold to one Cooper and a suit was brought against Cooper in detinue and Jane was recovered by the plaintiff in that suit at a value of $500. Thereupon Cooper got a transcript of the judgment and showed it to Lewis, and after conversation, Lewis proposed to Cooper that if he would wait eighteen months for the money, he would pay him, the $500. Cooper agreed to this and took a note or bond.

In the suit of Lewis v. Cooper it was insisted that there was no consideration for this note, that Cooper was not liable for the value of Jane, as there was no covenant in the contract or deed that he would warrant the title to the increase of Dilce. Cooper, at the time he signed the bond, thought he could be made liable. He was mistaken as to the law.

The court say that notwithstanding the law may be as Cooper contended, still Cooper was not entitled to the relief he sought, saying:

"Because this was a matter which the parties had a right to compromise for themselves; there was nothing illegal in it; nor is there an intimation that any artifice whatever was practiced upon Lewis. If we undertake to set aside agreements which were designed to stop litigation, merely because one party mistook the law, we establish a principle by which all such agreements may be destroyed. It must invariably happen that one of the parties to a compromise was mistaken in the law; and upon this discovery, if the agreement is to be annulled, it will be a fruitful source of litigation in this court. At the time of a compromise, with the information society then possessed, it might be the opinion of all that according to the terms of the compromise the party undertook to pay no more than the law compelled him to pay without the compromise. But a few years afterwards, new light is shed upon the subject; the law is understood differently and then the agreement must be rescinded. In a still more enlightened period legal obligations rechange and the law is understood certainly to be as it was originally understood; and then ought we to review the cause and hold a party to the agreement? To this absurd and ruinous consequence would the doctrine advanced by the counsel for the complainant lead." Lewis v. Cooper; Cooke, 467 at page 473, 474.

Forbearance to sue a third person may be implied from the conduct of the parties and the nature of the transaction. Ketchen had a right of action against the messenger boy. This agreement, in effect, amounts to a forbearance to sue the messenger and this

may be implied from the conduct of the parties and the nature of the transaction. Forbearance to sue a third person is a valuable consideration. 6 R. C. L., section 70, page 660.

It results that the assignments of error are overruled, the judgment of the lower court is affirmed. The plaintiff will recover of the defendant and his surety on appeal bond the amount of the judgment with interest thereon from the date of its rendition and all the costs of the cause including the appeal for which execution will issue.

Heiskell and Senter, JJ., concur.