Jerry **MULLINS, et al., Plaintiffs–Appellees,**

v.

James W. **PARKEY, et al., Defendants.**

Court of Appeals of Tennessee,
Eastern Section.

April 2, 1992.

Permission to Appeal Denied by
Supreme Court July 27, 1992.

Charles F. Sterchi, III, Carpenter & O'Connor, Knoxville, for Auto–Owners Ins. Co.

William A. Simms, Arnett, Draper & Hagood, Knoxville, for James W. Parkey.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

The Appellant, Auto–Owners Insurance Company, appeals from a judgment to enforce an agreed settlement between it, its insureds, Defendant James Parkey, and his insurance carrier.

This appeal is the outgrowth of a head-on collision between an automobile driven by Plaintiff–Appellee Tracy Mullins and a pick-up truck driven by Defendant James W. Parkey in December, 1988. The automobile driven by Tracy was owned by her father, Plaintiff–Appellee Jerry Mullins. Riding in the car with Tracy were Plaintiffs–Appellees Ruby Mullins and Jerri Casey Mullins (all referred to as the Mullinses). Jerri was a minor at the time of the accident. A Mr. Ronnie Lamb was riding as a guest passenger of Mr. Parkey at the time of the accident.

It is alleged in the original complaint that all of the passengers in the Mullins car received severe injuries and Mr. Parkey was operating his vehicle under the influence of an intoxicant. At the time of the accident, the Appellant, Auto–Owners Insurance Company (Auto–Owners), had an automobile liability policy in force on the Mullins automobile affording uninsured and underinsured motorist coverage of $25,000/$50,000 for bodily injury and $10,000 property damage coverage.

For some reason which is not explained in the record, before suits were filed against Mr. Parkey, Auto–Owners paid the full amount of its bodily injury coverage under its policy ($50,000) to the Mullinses and paid Jerry Mullins $5,765 for damages to his automobile.

Subsequently, a suit was filed by the Mullinses against Mr. Parkey for their personal injuries and property damage to the car. Mr. Charles F. Sterchi, who was counsel for Auto–Owners, participated in these proceedings along with Mr. Floyd W. Rhea, Mullinses' counsel, to protect the subrogation rights of Auto–Owners. In the interim, Mr. Lamb, who was the guest passenger riding with Mr. Parkey, filed suit against Mr. Parkey for personal injuries and Mr. Parkey filed a counterclaim against Tracy and Jerry Mullins for personal injuries, alleging it was the negligence of Tracy that caused the accident.

Mr. Parkey was not an uninsured motorist, but had coverage with Economy Fire and Casualty Company of $20,000 and $40,000 bodily injury limits and $10,000 property damage coverage.

In the spring of 1991, the parties and their counsels negotiated a settlement of all claims. A settlement agreement was reached and memorialized in a letter on June 14 from Auto–Owners' counsel, Mr. Sterchi, to Mr. Rhea, counsel for the Mullinses. By the terms of that settlement, Mr. Parkey's insurance carrier agreed to pay its full bodily injury liability limit of $40,000. Of that sum $4,000 was to be paid to Mr. Lamb and the remaining $36,000 to be divided equally between the Plaintiffs and Auto–Owners. Additionally, Mr. Parkey's insurer paid $5,765 under its property damage liability coverage directly to Auto–Owners in satisfaction of its payment in like amount to Jerry Mullins under his uninsured motorist property damage coverage. The payment to Mr. Lamb and the property damage claim were consummated separate and apart from this suit and are not at issue here.

After accepting this settlement, on June 14 Mr. Sterchi cancelled all discovery depositions, including a doctor's deposition. The suits apparently were not dismissed.

On June 17 the adjuster for Auto–Owners informed its attorney that after the settlement arrangements of June 14 were made, he realized Auto–Owners had paid the claims to Mullinses under the uninsured/underinsured motorist coverage of the Plaintiff's policy but he had forgotten that fact on June 14

when the 50/50 split of proceeds was agreed upon. The adjuster would not consummate the settlement agreement to that extent, claiming that, under the subrogation agreement, Auto–Owners had a first right to any recovery up to the limits of its payment of $50,000.

The Mullinses filed a motion with the trial court asking the court to enforce the settlement agreement against Auto–Owners. Upon the hearing, which apparently was conducted upon the record, the letters from Mr. Sterchi to Mr. Rhea, and oral argument, without other evidence, the court entered an order directing the $36,000 be divided equally between Auto–Owners and the Mullinses.

Auto–Owners has appealed, saying the court was in error in awarding half of the proceeds of the settlement to Mullinses. Appellant argues that the settlement was unenforceable because Mullinses gave no consideration for a share of the proceeds.

■ We cannot agree with Appellant's insistence that there was no consideration for Mullinses' promise of compromise. "The compromise of a claim is a sufficient consideration for a promise to pay money." *See Service Stamp v. Ketchen*, 10 Tenn.App. 59, 61 (1929). *Also see Thurmond v. Whittaker*, 1 Tenn.App. 111 (1925). Also, it appears the Mullinses may very well have had more to lose by the compromise settlement than Auto–Owners. It appears from the record that the Mullinses' medical expenses alone exceeded $125,000. Although Mr. Parkey's insurance coverage of $40,000 for bodily injury and $10,000 for property damage is obviously insufficient to cover his potential liability, there is nothing in the record to show he is judgment proof. Had the case gone to trial, the probability of Mullinses recovering substantially more than their medical expenses is very real.

The potential benefits to Auto–Owners stemming from the settlement are also very real. By settling the case, Auto–Owners was saved the expense of defending the Mullinses against Parkey's counterclaim. The settlement also foreclosed any potential liability of Auto–Owners from a recovery by Parkey against the Mullinses.

■ Auto–Owners also insists it is entitled to all of the $36,000 under the subrogation provisions of its policy. As pertinent here, the policy provides as follows:

"SUBROGATION. In the event of any payment under this policy, except under Coverages C.1 and C.2 of the Insuring Agreements, the Company shall be subrogated to all the insured's rights of recovery therefor and the insured shall execute all papers required and shall do everything that may be necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

"TRUST AGREEMENT. In the event of payment to any person under Coverage D:

"(a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;

"(b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this policy;

"(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights."

Coverage "D" referred to above is the uninsured/underinsured motorist coverage. In addition to the subrogation provisions in the policy, Tracy and Ruby Mullins, who each received $20,000 of the policy proceeds, executed a similar subrogation agreement to Auto–Owners.

Under the holding of our supreme court in *Wimberly v. American Casualty Company of Reading, Pennsylvania*, 584 S.W.2d 200 (Tenn.1979), Auto–Owners could not recover under its subrogation claim until the Mullinses were made whole. In *Wimberly*, the court, in addressing the rights of the parties under a subrogation agreement when the recovery from the tortfeasor was less than the casualty loss, said:

The purpose of insurance subrogation is to prevent either the unjust enrichment of the insured through a double recovery or a windfall benefit to the principal tortfeasor by allowing the insurer to stand in the

shoes of the insured once the insurer has fully indemnified the insured. (Citations omitted.)

*Id.* at 203.

[T]he surety's right of subrogation does not arise ordinarily until the debt is paid in full ... "the normal rule of subrogation applies and the subrogee has no right to share in the funds recovered from the tortfeasor until the subrogor is made whole." (Citations omitted.)

584 S.W.2d at 204.

■ Auto–Owners' next contention is that since there was a mistake as to which coverage under its policy (that is, uninsured motorist or general coverage) the $55,000 was paid to Mullinses, the settlement agreement should be rescinded. "A unilateral mistake ... is generally held insufficient to invalidate a compromise and settlement." 15A, Am. Jur.2d Compromise and Settlement § 34, pp. 807–808. An exception to the rule may apply if the other party knows or has reason to know of the other's error and can be placed in statu quo. *See Confrancesco Construction Co. v. Superior Components, Inc.,* 52 Tenn. App. 88, 371 S.W.2d 821 (1963). Auto–Owners relies on *Confrancesco* as supportive of its insistence. We think, however, this reliance on *Confrancesco* is misplaced. In its brief, Auto–Owners quotes from *Confrancesco* as follows:

Relief from the effect of a unilateral mistake is consistently allowed where one party knows or has reason to know of the other's error and the requirements for rescission are fulfilled. [Citations omitted.] Then too, Courts have generally granted relief from the effect of a unilateral mistake, through rescission, where the mistake was material to the contract and was not the result of neglect of a legal duty, if enforcement of the contract as made would be unconscionable, and if the other party could be placed in statu quo.

371 S.W.2d at 823–24.

We agree these are correct quotes from *Confrancesco.* The record before us, however, fails to show the Mullinses knew or had any reason to know Auto–Owners had overlooked or forgotten it had paid them under the uninsured motorist provisions of its policy at the time it agreed to a 50/50 division of the $36,000 from Parkey's insurance coverage.

There is another compelling reason why *Confrancesco* is not controlling in the case at bar and that is, if the settlement agreement were rescinded the Mullinses could not be "placed in statu quo." In consideration of Mullinses' not pursuing their claims against Parkey, his insurance company agreed to pay Auto–Owners and Mullinses $36,000. If the $36,000 were all awarded to Auto–Owners, as it contends it is entitled to, not only would Mullinses have no funds from the settlement, they would be foreclosed from further pursuing their claims against Parkey.

The issues are found in favor of the Appellees. The judgment of the trial court is affirmed and the cost of this appeal is taxed to the Appellant. The case is remanded to the trial court for any further necessary proceedings.

GODDARD and McMURRAY, JJ., concur.