# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| ANDREA D. BRYANT, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Davidson Circuit No. 95C-3389 |
| | ) | |
| VS. | ) | Appeal No. 01A01-9712-CV-00710 |
| | ) | |
| PHILLIP WRIGHT, JR., | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

**FILED**

January 7, 1999

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE HAMILTON V. GAYDEN, JR., JUDGE

**RENARD A. HIRSCH, SR.**
**SMITH & HIRSCH**
Nashville, Tennessee
Attorney for Appellant

**DAVID O. HUFF**
Nashville, Tennessee
Attorney for Appellee

**AFFIRMED AS MODIFIED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Defendant Phillip Wright, Jr. ("Wright" or" Appellant") appeals the judgment of the

trial court which awarded Plaintiff Andrea D. Bryant ("Bryant" or "Appellee") the sum of $9,919.80 for breach of contract.

## I. Factual and Procedural History

The parties met in 1981 or 1982 and began living together, along with Bryant's minor son, at the residence Bryant owned sometime during 1983. While living together, they made real estate investments. Wright gave Bryant two duplexes. Bryant profited approximately $200.00 per month in excess of the mortgage payment. While residing with Bryant, Wright made repairs and additions to Bryant's house. The value of the work performed on Bryant's house was approximately $15,000.00. Bryant assisted Wright financially in his business. There was no arrangement to pay back the financial assistance.

One of the real estate investments made by the parties was the purchase of a vacant lot on Delta Avenue in Nashville. Said lot was purchased for the purpose of building a duplex for investment. To finance construction, the parties borrowed $20,000 from Associates Financial Services. Bryant used her residence as collateral. Both parties signed the loan document. There was no written agreement, but the money was to be used exclusively toward the development of the Delta property duplex and the loss or profit was to be shared 50/50. The loan proceeds were deposited into Bryant's bank account, and Bryant wrote checks to Wright periodically when he indicated he needed it for the Delta property.

During excavation, a big hole was discovered on the lot which caused the excavation work to be much more difficult than anticipated. Consequently, the project never got beyond the foundation being laid. Bryant contended that Wright diverted some of the loan proceeds to other ongoing construction projects of his. Wright denied this. The duplex project was eventually abandoned. Wright sold the lot and divided the proceeds with Bryant.

2

In March of 1989, Wright moved out of Bryant's house and Bryant subsequently moved to Birmingham, Alabama. At this time, the loan to Associates was still outstanding. In effort to purchase a residence in Birmingham, Bryant applied for a mortgage loan and was told that her debt ratio was too high. On October 3, 1989, Wright signed the following promissory note.

> I, Phillip Wright, Jr. agree to repay Andrea D. Bryant $177.00 per month for 7 years to cover her payoff of loan #050386-5 to Associates Financial Service for a business loan to me.
>
> The amount to be repaid will be $150.00 plus 18% interest. Payments will commence November, 1989 and end June, 1996 (80 month) and will total $14,160.00.

After the 1989 note was signed, Bryant paid off the balance of the Associates loan in the amount of $19,800.00.

Subsequent to signing the note, Wright performed work on Bryant's new residence and sent money to Bryant on a few occasions. Wright considered all of these actions on his part to be gifts to Bryant. Bryant chose to credit Wright for each of these amounts as payments on the note. Such "payments" totaled $1,200.00.

No other payments were made on the promissory note and Bryant filed suit to collect on the note on October 12, 1995. At trial, the parties disputed the motivations behind the signing of the note. Wright contended that Bryant contacted him and told him she needed him to sign a note to her in order to improve her debt ratio so she could obtain a loan for a new residence. Wright claimed he signed the note solely for that purpose.

Bryant argued that while she did need the note to improve her debt ratio, the basis for the note was Wright's co-obligation on the debt to Associates. Bryant claimed she presented Wright with a promissory note because when she sold her house in Nashville she had to pay off the Associates loan (signed by both parties) out of the proceeds of the sale. By paying off the Associates loan, she extinguished both parties' liability on that note.

The Court entered judgment for Bryant in the amount of $9,919.80 against Wright.

This appeal by Wright followed.

## II. The 1989 Note

It is undisputed that Wright signed a promissory note to Bryant in 1989. The promissory note reads as follows:

> I, Phillip Wright, Jr. agree to repay Andrea D. Bryant $177.00 per month for 7 years to cover her payoff of loan #050386-5 to Associates Financial Service for a business loan to me.
>
> The amount to be repaid will be $150.00 plus 18% interest. Payments will commence November, 1989 and end June, 1996 (80 month) and will total $14,160.00.

However, the parties sharply disputed the reason why Wright signed this promissory note. Bryant testified that she was having difficulty obtaining a loan for her new home in Alabama as her debt ratio was too high. Wright contended that this was the *only* reason he signed a note to Bryant. He claimed that Bryant called him and wanted him to execute such note to her solely for the purpose of improving her debt ratio to obtain her loan. It is his contention that Bryant was never going to collect on this note - it was merely a sham, and he did it to assist her in obtaining her loan.

Bryant argued that while she did need the note to improve her debt ratio, the basis for that note was the parties' co-obligation on a prior note to Associates for $20,000. The parties had used Bryant's old residence to secure the Associates note, and the note had to be paid off upon Bryant's sale of that residence. As she alone was going to be paying off their joint obligation out of the sale of her old residence, Bryant sought to obtain a note from Wright obligating him to pay his portion of that joint obligation.

In making his ruling the chancellor stated the following:

> If the Court were to strictly construe this case, in the Court's opinion it would be a judgment for the plaintiff based on the 1989 - - October '89 note at 18%, which would come out to be over $30,000 that the defendant would owe, and that may be what's ultimately done if this case goes up to appeal and it may very well be ordered on appeal or remanded for that. But

4

the Court is going to rule otherwise and rule that the 1989 note was nothing more than an acknowledgment of the defendant as a comaker of the 1987 note to Associates Capital.

The court Is further going to hold that the plaintiff is entitled to $9,919.80 but has waived all interest by laches.

[S]o I'm going to grant a judgment in the amount of $9,919.80 because the plaintiff was a comaker . . . The 1989 note for the purpose of appeal does, in fact, have consideration. It's not an accommodation note, and it is a consideration as the release of the right to sue as a comaker.

The evidence does not support the trial court's conclusion that the 1989 note was nothing more than an acknowledgment of the defendant as comaker of the 1987 note to Associates. Under Bryant's version of the facts, the 1989 note evidenced an agreement between the parties that Bryant would pay off their joint debt, and Wright would owe Bryant his share of that debt. Under Wright's version of the facts, the note was merely a sham for the purpose of improving Bryant's debt ratio to assist her in obtaining a loan.

The trial court recognized that the 1989 note was supported by consideration. The trial court observed that if it were to strictly construe the case, it would grant judgment for the plaintiff based upon the 1989 note. This Court is of the opinion that this is the correct result.

In stating that under a strict construction it would grant judgment for the plaintiff based upon the 1989 note, the trial court necessarily found Bryant's version of circumstances surrounding the 1989 note to be more credible. It is undisputed that the parties were comakers of the 1987 Associates note and as such they were jointly liable for the payment of that note. According to Bryant's testimony, when she undertook to pay off that note on her own, she sought legal reassurance from Wright that he would reimburse her for his portion of that debt.

Wright contends that the 1989 note was not supported by any consideration. The trial court stated that the consideration for the note was the release of the right to sue as a comaker. Wright argues that, inasmuch as Bryant had not paid Associates at the time Wright signed the note, Bryant's right to sue Wright had not ripened and thus she did not refrain from doing anything she had a right to do.

5

Generally, consideration for a contract may be either a benefit to the promisor or a detriment to or obligation upon the promisee. Trailer Conditioners, Inc. v. Huddleston, 897 S.W.2d 728, 731 (Tenn. App. 1995). The benefit to Wright was the extinguishment of a $20,000 debt that he was jointly and severally liable on. At trial, Wright admitted that Bryant's paying of the Associates loan benefitted him. In exchange for that benefit, Wright agreed to pay Bryant the sum of $177.00 per month for 80 months.

The 1989 note was an executory contract. In effect, if Wright promised to pay Bryant his share of the Associates loan over the course of seven years, Bryant promised immediately to pay off the Associates note and extinguish both Bryant's and Wright's liability on that note. Mutual promises are sufficient consideration. Rodgers v. Southern Newspapers, Inc., 379 S.W.2d 797, 800 (Tenn. Ct. App. 1964); Union Realty Co., Ltd. v. Moses, 984 F.2d 715 (6th Cir. 1993).

Bryant would have been legally entitled to contribution from Wright upon paying off the Associates loan. A joint obligor who discharges a debt can enforce contribution against another who was equally bound. Newson v, Shackleford, 43 S.W.2d 384, 385, 163 Tenn. 348 (1931). Contribution is an equitable principle that applies only in situations where equities of the parties are equal and they share a common obligation or liability. Squibb v. Smith, 948 S.W.2d 752 (Tenn. Ct. App. 1997). Justice does not require that Bryant first pay off the parties' joint obligation before seeking legal reassurance from Wright that he will repay her for his portion of that debt.

Bryant was free to seek a binding contract from Wright that he would pay her a certain amount, if she paid off their joint obligation. If Wright had not agreed to pay Bryant his portion of the debt, Bryant might have chosen not to pay the Associates note in full at that time. Certainly, if payments were not made on the note, Associates could have brought action against both parties.

By signing the contract, Bryant agreed to pay off the Associates loan on which the

parties were jointly liable. Wright agreed to pay Bryant the sum of $177.00 for 80 months to reimburse her for discharging the joint liability of the parties. If Bryant had paid off the loan without this agreement, she could have brought action against Wright for contribution. However, since Wright contracted to pay Bryant his share of the Associates debt over seven years in exchange for that payoff, Bryant should no longer have the right to seek contribution from him. Therefore, Bryant's release of her right to sue Wright as comaker of the Associates note was implied in the 1989 note. *See* Service Stamp Co. v. Ketchen, 10 Tenn. App. 59 (1929) (The nature of the transaction and the conduct of the parties should all be taken into consideration and from these it may be implied that there was a forbearance to sue).

For all the foregoing reasons, the 1989 note was more than a mere acknowledgment of Wright as comaker of the 1987 note to Associates. This Court holds that the 1989 note was a valid and enforceable contract, supported by adequate consideration.

### III. Damages

Based upon its finding that the 1989 note was nothing more than an acknowledgment of Wright as comaker of the 1987 note to Associates, the trial court entered judgment for Bryant in the amount of $9,919.80. The trial court apparently divided the amount paid to Associates by Bryant ($19,839.61) and ordered Wright to pay half as comaker of the note.

Having found that the 1989 note was a valid and enforceable contract, we must turn to that contract to determine the appropriate damages. Under the terms of the contract, Wright was to pay Bryant $177.00 per month for seven years. The contract further stated, "The amount to be repaid will be $150.00 plus 18% interest. Payments will commence November, 1989 and end June, 1996 (80 month) and will total $14,160.00."

Apparently, the trial court saw the language in the contract "plus 18% interest" and interpreted that to be a yearly interest rate.[1] In reality, the 18% bears more similarity to a fee tacked onto the sum of $150.00 per month. The 18% was not an interest rate to be added to the amount stated, but was tacked on to the sum of $150.00 each month to make the payment due $177.00. Using the terms found in the contract, the effective interest rate on the loan was actually 5.05%.

There is evidence in the record that, subsequent to signing the note, Wright performed some work on Bryant's home, and on three occasions sent money to Bryant for Bryant and her son. While Wright testified that these were gifts from him to Bryant, Bryant chose to credit Wright for each of these amounts as payments on the note. Such "payments" totaled $1,200.00.

Accordingly, this Court finds that Bryant is entitled to the sum of $14,160.00 due under the contract with Wright being credited for payments made of $1,200.00 for a balance due of $12,960.00. As discussed more fully above, that figure includes interest through June 1996, as such interest was built into the total amount due.

On the issue of pre-judgment interest at either the effective interest rate of the contract (5.05%) or the statutory interest rate of 10%, the trial court found that Bryant had waived interest by laches, by sitting on her right for all of these years. This Court does not see any reason to upset the trial court's ruling on the issue of interest.

## IV. Statute of Limitations

The note at issue in this case was signed on October 3, 1989 with its first payment falling due on November 1, 1989. This lawsuit was filed on October 12, 1995. Wright contends that to the extent this action seeks damages for misdirected funds, it is barred

---

[1] In making its ruling, the trial court stated, "If the Court were to strictly construe this case, in the Court's opinion it would be a judgment for the plaintiff based upon the 1989 - - October '89 note at 18 percent, which would come out to be over $30,000 that the defendant would owe, and that may be what's ultimately done if this case goes up to appeal . . ."

by the statute of limitations.

> **§28-3-105 - Property tort actions - Statutory liabilities. -**
> The following actions shall be commenced within three (3)
> years from the accruing of the cause of action;
> > (1) Actions for injuries to personal or real property; and
> > (2) Actions for the detention or conversion of personal
> > property . . .

(Tenn. Code Ann. §28-3-105).

The gravamen of an action, rather than its designation as an action for tort or contract, determines the applicable statute of limitations. Pera v. Kroger Co., 674 S.W.2d 715, 719 (Tenn. 1984). While the misdirection of the funds from the Associates loan was brought up at trial, the gravamen of the action was for failure to pay the promissory note. The applicable statute of limitation is six (6) years.

> **§28-3-109 - Rent - Official misconduct - Contacts not
> otherwise covered - Title insurance - Demand notes. -** (a)
> The following actions shall be commenced within six (6) years
> after the cause of action accrued:
> > . . . (3) Actions on contracts not otherwise expressly
> > provided for.

(Tenn. Code Ann. §28-3-109).

Wright further contends that if the 1989 note was merely an acknowledgment of a debt, as found by the trial court, the six year statute of limitations would start running from the date of the note. Thus, the last day upon which this action could be filed was October 3, 1995. However, this Court held above that the 1989 note was not merely an acknowledgment of the Associates debt but rather a valid and enforceable contract. As it pertains to an installment note, the law is well settled that the cause of action accrues on each installment when it becomes due, and the statutory period begins to run from that moment on that installment. Consumer Credit Union v. Hite, 801 S.W.2d 822, 824 (Tenn. App. 1990). The first installment on the note was due November 1, 1989. This action was commenced by Bryant on October 12, 1995, less than six years after the first installment was due.

For the foregoing reasons, we hold that this action was not barred by the statute of

9

limitations.

## **V. Conclusion**

The judgement of the trial court for Bryant is hereby affirmed as modified based upon different grounds than stated by the trial court, with the amount of damages being amended from $9,919.80 to $12,960.00. Costs of this appeal are taxed to Wright, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.