# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## BEAMAN PONTIAC COMPANY v. ROY B. GILL

**Direct Appeal from the Circuit Court for Davidson County**
**No. 98C-2494, Carol Soloman, Judge**

---

**No. M1999-00666-COA-R3-CV - Decided April 28, 2000**

---

Defendant who entered into an agreement to settle directly appeals the trial court's grant of Plaintiff's motion to enforce said agreement.  Specifically, Appellant argues that the Plaintiff followed improper procedure to enforce the settlement and that the agreement is invalid.  Under the authorities cited below and for the following reasons, we find, in the absence of any showing of prejudice to the defendant, no specific procedure need be followed.  We find the agreement to be in the nature of a bilateral contract and fully enforceable.  The trial court is affirmed in all respects, and the cause is remanded for such further proceedings as may be necessary below.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**.

CAIN, J., delivered the opinion of the court, in which CANTRELL, P.J., M.S. AND KOCH, J., joined.

David T. Hooper, Brentwood, Tennessee, for the appellant, Roy B. Gill dba Russellville Flower Shop.

Alix Coulter Cross, Nashville, Tennessee, for the appellee, Beaman Pontiac Company.

## OPINION

This case concerns a trial court's order granting enforcement of a settlement agreement entered into by the parties below.  The controversy stems originally from Mr. Gill's purchase of a vehicle from Beaman Pontiac Company (Beaman).  Part of the consideration for this purchase took the form of a 1989 Jaguar XJS automobile.

Beaman then transferred that Jaguar to South Cumberland Motors.  The vehicle traveled through several different purchasers until it was discovered that the car had a "salvaged or branded title" prior to being traded from Gill to Beaman.  As a result of this discovery, each vendee went

against its respective vendor until the Jaguar came to rest on Beaman's lot. On June 2, 1998, Beaman's counsel, James Cameron, informed Gill's counsel, Thomas Cresswell, of the aforementioned controversy and demanded Gill repurchase the vehicle or face suit for damages. Said suit was filed on September 9, 1998. On January 26, 1999, Cameron filed Beaman's "Motion for Judgment to Enforce Settlement Agreement or in the Alternative for a Default Judgment." The following factual allegations contained in that motion are not in dispute.

> Beaman's counsel prepared a Settlement Agreement which was forwarded to Defendant's counsel who approved the document. The Settlement Agreement was executed by the Defendant and returned to Plaintiff's counsel with a check for the amount of the settlement proceeds. While the original Settlement Agreement and check were in the mail to Plaintiff's counsel, Defendant's counsel faxed Plaintiff's counsel indicating he was "revoking" the settlement.[1]

A copy of the alleged agreement was attached as an exhibit to the motion. The court heard argument on this motion and granted enforcement of the settlement agreement by order dated March 19, 1999. Gill moved to alter or amend this order. Said motion was denied. From the order entered March 19, Gill appeals challenging the propriety of the enforcement proceeding as well as the enforceability of the settlement.

## I. Validity of Settlement Agreement

Appellant takes issue primarily with the court's recognition of the agreement to settle as a valid and enforceable contract. Appellant produces several novel arguments against validity and attempts among other things to call into question the well-settled and all-too-familiar "mailbox rule" of acceptance. Considering each of these various arguments in its turn, we must affirm the trial court.

### A. Sale of Goods

In addition to the above argument, Appellant urges that in as much as the contract entered into between Cameron and Cresswell concerned the sale of a Jaguar said contract was governed by Article II of the Uniform Commercial Code. As such the fax received by Mr. Cameron from Mr. Cresswell constituted a revocation of acceptance after a reasonable time. *Compare* Tenn. Code Ann. §47-2-608(2) (1996) (discussing revocation of acceptance upon tender of nonconforming goods) .

---

[1]The letter memorializing Cresswell's acceptance of the terms of settlement included along with an apology for the delay in execution of the agreement a check from Mr. Gill to Beaman for $12,769, the amount agreed upon by the parties as consideration for the Juaguar and settlement of all claims. A copy of this letter was faxed simultaneously to Cameron. The second fax followed closely on the heels of the first. In this facsimile, Mr. Cresswell apologized for Mr. Gill's sudden change of tack and informed Mr. Cameron that a "stop payment" order had been issued on the settlement check. This letter serves as kindling for the "mailbox rule" discussion *infra*, treating as a mere offer that which from all logic and appearance constitutes a valid and enforceable contract.

Appellant fails to recognize the nature of the agreement at issue. The essential purpose of the agreement at issue was not the "buyback" of a Jaguar, but the settlement of a disputed claim. Article II of the Uniform Commercial Code applies to contracts whose essential purpose is the sale of tangible personal property. *See* Tenn. Code Ann. §47-2-102 (1996). Thus the provisions of Tenn. Code Ann. § 47-2-608(2) do not apply to a settlement agreement.

### B. Failure of Consideration

Appellant also argues that since Beaman never delivered the Jaguar and Mr. Gill stopped payment on the original check tendered as settlement, then the alleged contract of compromise fails for lack of consideration. Once again Appellant misunderstands the nature of the agreement between the parties. The recitation in the writing and the nature of the parties' original exchange attest to the bilateral nature of the contract of settlement. In essence, Beaman promised to dismiss it's cause of action brought in good faith in exchange for Gill's promise to repurchase the Jaguar from Beaman. The parties to a bilateral contract bind themselves by mutual promises to perform. Thus the exchanged promises serve as consideration for the contract. Any refusal to carry through on those promises does not render the contact void for lack of consideration. It most likely operates as a breach of an existing contract.

### C. The "Mailbox Rule"

Perhaps the most time-honored bit of legal calisthenics known in the field of contracts is the "Mailbox Rule." Appellant's argument serves as clear testament to the controversy and confusion which still surround this legal doctrine.[2] The source of the confusion seems to be the contradictory communication from Mr. Gill's counsel. However, as Appellee correctly urges, consideration of the viability of the mailbox rule is immaterial to our discussion here. The record shows that the mailed "acceptance" of the settlement agreement between counsel represents the culmination of their bargaining by phone and letter. Counsel for both parties state in their affidavits that, following the communication of Mr. Cameron's final offer of settlement and prior to the mailing of the executed agreement, Mr. Cresswell indicated the acceptability of the contract terms. Under the circumstances, the effective acceptance occurred during these prior telephonic and written conversations, not in the mailing of the settlement form executed per these communications. The Appellant's argument for abrogation of the mailbox rule in this case is misplaced. The agreement was in fact a valid contract for compromise and settlement enforceable by motion in the instant action. The document signed

---

[2]The "mailbox rule" rule requires that acceptances be effective "upon dispatch" in the mails. Its modern counterpart appears in the Second Restatement of Contracts thus:

### §63. Time When Acceptance Takes Effect

Unless the offer provides otherwise,

(a) an acceptance made in a manner and by a medium invited by an offer is operative and completes the manifestation of mutual assent as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror; ...

Restatement (Second) Contracts §63(a)(1981).

by the parties was merely a memorandum of their oral agreement.

## II. Procedure for Enforcement of a Settlement Agreement

Appellant also asserts that Beaman failed to follow the proper procedure for enforcing a contract for settlement. Mr. Gill argues that a separate proceeding is required to enforce an agreement to settle a lawsuit. Yet he has failed to provide this court any mandatory or persuasive authority prescribing any specific procedure for enforcement of a contract to settle claims.

Appellee for its part urges that a trial court has inherent authority and equitable power to enforce contracts of settlement concerning the subject matter of a suit before it. *See* 15A Am.Jur.2d *Compromise and Settlement* §37 (1976)(Supp. 1998). Appellee notes that the procedure followed below has been at least tacitly approved by this Court. *See Mullins v. Parkey,* 874 S.W.2d 12 (Tenn. Ct. App. 1992). Our review of the authorities on the subject support Appellee's view. *See Bowater North America Corp. v. Murray Machinery, Inc.,* 773 F.2d 71, 76 (6th Cir. 1985). *See also* 15A Am.Jur.2d *Compromise and Settlement* §37 (1976). There is an admitted paucity of mandatory authority in this state prescribing the procedure to be followed where a party to litigation attempts to enforce a settlement agreement. On this point we find the following persuasive:

> Since the law favors compromise and settlement of disputed claims and the avoidance of litigation, ... it should not circumscribe the means of carrying such settlements into effect.
>
> A compromise agreement may be enforced by pleading it as a defense in a subsequent action on the claim which it settled, or by a separate proceeding thereon, or it may ordinarily be enforced by petition or motion in the original action asking for such enforcement.

15A C.J.S. *Compromise and Settlement* §48 (1967).

Appellee also points to other jurisdictions which have recognized the inherent and discretionary authority of trial courts over settlement agreements concerning pending actions. *See e.g. Starchman v. Bill Stoffle Board, Inc.,* 610 S.W.2d 294 (Mo. Ct. App. 1980); *Teitelbaum Holdings, Ltd. v. Gold,* 396 N.E.2d 1029 (N.Y. 1979). Appellant has failed to show this court how enforcement on Beaman's motion as opposed to in a separate proceeding, has prejudiced his defense in any way. Mr. Gill was allowed to produce proof and argument relative to the validity of the settlement agreement, and still may pursue his vendor, Crest Cadillac in a suit for indemnification, if appropriate. Absent any showing that the chosen method for seeking enforcement prejudiced Appellee, we are of the opinion that the trial court's enforcement of the settlement was well within its inherent authority.

## III. Disposition

For these reasons and under the authorities cited above we affirm the trial court in all respects and remand the case for further proceedings not inconsistent with this opinion. Costs on appeal are taxed against the appellant.