IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 9, 2003 Session

## INEZ JEAN SEALS and TERRY HURD v. LIFE INVESTORS INSURANCE COMPANY OF AMERICA, ET AL.

Direct Appeal from the Chancery Court for Sequatchie County
No. 1810    John W. Rollins, Chancellor

No. M2002-01753-COA-R3-CV - Filed December 30, 2003

This is a case involving the reformation of a settlement agreement terminating claims on two policies between plaintiffs and the defendant insurance company. The trial court refused to reform the settlement agreement and denied defendants their attorney's fees. For the following reasons, we affirm in part, reverse in part, and remand this case for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Charles J. Gearhiser, Sam D. Elliott, Chattanooga, TN, for Appellant

Howard L. Upchurch, Pikeville, TN, for Appellees

### OPINION

### Facts and Procedural History

In May 1997, Charles Seals was shot and killed by James Newby. Mr. Seals had two accidental death policies with Life Investors Insurance Company ("Life Investors") on his life naming his wife, Inez Jean Seals ("Seals"), and his stepson, Terry Hurd ("Hurd"), as the beneficiaries. The two policy numbers were GXB5030053 and GXB5034274 (collectively the "GXB policies") and each contained benefits other than accidental death benefits, including, but not limited to, medical benefits.

In her attempts to collect the accidental death benefits after her husband's death, Seals encountered difficulties as Life Investors defended on the basis that the GXB policies did not cover

the circumstances surrounding Charles Seals' death. After threatening litigation against Life Investors, Seals retained an attorney, Stephen Greer ("Greer"), to handle her claims for accidental death benefits under the GXB policies. In addition, Seals requested Greer handle her medical benefits claims against Life Investors, though Greer informed Seals he would handle the accidental death benefits claims first.

In the course of his representation of Seals, Greer obtained copies of the GXB policies themselves from either Seals or Life Investors' attorneys, Charles Poss ("Poss") or Charles Dooley ("Dooley"), but Greer did not read through the policies nor did he discuss their contents with Seals or Hurd. The GXB policies themselves describe their scope of coverage. Greer's understanding of the GXB policies was that they concerned only accidental death benefits, and Seals at no point explained that the policies addressed other medical insurance benefits. In addition, Poss and Dooley never mentioned the GXB policies covered more than accidental death benefits nor did they state to Greer that the policies covered only accidental death benefits.

During negotiations for a settlement, Seals expressed her concerns about jeopardizing her hospital indemnity and medical benefit claims against Life Investors, though she did not state that such benefits stemmed from the GXB policies. After Poss and Dooley submitted a draft of a settlement agreement, Greer returned the draft with deletions and suggested additions[1] he wrote by hand on a copy of the draft. This language was added to the final draft of the settlement agreement and, essentially, acted to terminate all claims and rights Seals and Hurd had under the GXB policies including their hospital indemnity and medical benefits claims. In addition, on the first page of the settlement agreement, it states that Seals and Hurd discharge Life Investors from "any and all claims for benefits pursuant to the [GXB policies]." Seals and Hurd failed to read over the final draft of the settlement agreement before they executed it in July 1999 and simply relied upon Greer's mistaken interpretation of the settlement agreement's effect. Seals and Hurd even initialed next to a typographical error in the paragraph at issue, which Greer added. Upon executing the settlement agreement, Life Investors paid Seals and Hurd with a check for $175,000.

When Seals attempted to collect on her medical benefit claims, Life Investors defended by stating such claims were released in the settlement agreement. Subsequently, Seals and Hurd filed this action in the Chancery Court of Sequatchie County against Life Investors, Poss and Dooley's law firm, Leitner, Williams, Dooley and Napolitan, PLLC ("Leitner, Williams PLLC"), and Poss individually, seeking reformation of the settlement agreement on theories of unilateral and mutual mistake. A bench trial was held. After the trial, the trial court refused to reform the agreement, though it also refused to award Life Investors its attorney's fees despite the terms of the settlement agreement. Life Investors subsequently appealed seeking this Court's review of whether the trial

---

[1] Specifically, as evidenced in trial exhibit 6, Greer handwrote the following addition:

This release shall not, however, prevent or act as a bar to any claims or rights that the Releasors may have against the Releasee as a result of matters arising prior to July 16, 1999, under policies in force, prior to July 16, 1999, *other than Certificates of Group Insurance No. GXB5030053 and GXB5034274*. (emphasis added).

-2-

court erred when it failed to require the plaintiffs indemnify Life Investors for its attorney's fees and other costs expended in successfully defending the reformation suit. Plaintiffs present the additional issue of whether the trial court erred in finding no mutual mistake or unilateral mistake coupled with fraud existed. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## Standard of Review

For a review of a trial court's findings of fact sitting without a jury, this Court examines such findings *de novo* upon the record accompanied by a presumption of correctness. Tenn. R. App. P. 13(d); *Williams v. Botts*, 3 S.W.3d 508, 509 (Tenn. Ct. App. 1999). This Court may not reverse such findings of fact unless the evidence in the record preponderates otherwise. Tenn. R. App. P. 13(d); *Williams v. Botts*, 3 S.W.3d at 509. There is no presumption of correctness for a trial court's conclusions of law. *Union Planters Nat'l Bank v. Am. Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App. 1993); *Hogan v. Yarbro*, No. 02A01-9905-CH-00119, 1999 Tenn. App. LEXIS 673, at *9 (Tenn. Ct. App. October 5, 1999); *Tennessee Dep't of Human Servs. v. Shepherd*, No. 89-78-II, 1989 Tenn. App. LEXIS 783, at *3-4 (Tenn. Ct. App. November 29, 1989).

## Mutual and Unilateral Mistake

We begin our review with Seals' and Hurd's argument that the trial court erred when it refused to reform the settlement agreement to reflect their intentions. "To reform a written instrument for mistake, there must have been a mutual mistake, or mistake of one party influenced by the other's fraud." *McMillin v. Great S. Corp.*, 480 S.W.2d 152, 155 (Tenn. Ct. App. 1972) (citing *Jones v. Jones*, 266 S.W. 110 (Tenn. 1924)). As the Middle Section of this Court has stated:

> A mutual mistake is one that must be common to both parties. It must be shown that both parties intended to agree to the same thing, but the contract, through error, fails to express that mutual and identical intent. A mutual mistake is one where both parties to a bilateral transaction share the same erroneous belief, and their acts do not in fact accomplish their mutual intent.

*Russell v. Sec. Ins. Inc. et al. v. McPherson*, No. 01A01-9803-CV-00135, 1999 Tenn. App. LEXIS 102, at *5 (Tenn. Ct. App. February 18, 1999) (citations omitted). A unilateral mistake by one party is insufficient to invalidate an agreement. *Mullins v. Parkey*, 874 S.W.2d 12, 15 (Tenn. Ct. App. 1992). This rule does not apply when the party's mistake is induced by fraud of the other party, *McMillin v. Great S. Corp.*, 480 S.W.2d at 155, or the other party knows or has reason to know of the party's mistake and that party can be returned to the status quo. *Mullins*, 874 S.W.2d at 15. To demonstrate the necessity of reformation, whether on the ground of mutual mistake or unilateral mistake accompanied by fraud, the evidence must be clear, cogent and convincing. *Marron v. Scarbrough*, 314 S.W.2d 165, 173 (Tenn. Ct. App. 1958); *McMillin*, 480 S.W.2d at 155.

First, appellees Seals and Hurd argue that it was the intention of both parties to settle only the accidental death claims arising from Charles Seals' death and the trial court erred when it found no mutual mistake existed. After our review of the record, we hold the evidence does not preponderate against the trial court's finding on this issue. While Greer, Seals and Hurd each testified they only intended to settle the claims related to Charles Seals' death, Charles Poss, counsel for Life Investors, stated it was his client's intention to cover all of Seals' and Hurd's existing policies in the agreement. In addition, Poss testified that Greer's handwritten additions to the agreement draft, which Seals and Hurd now object to, were consistent with his client's intentions. Seals had only expressed concerns about releasing her claims under the other policies to Greer and did not convey such concerns to Poss, Dooley, or any other representative of Life Investors. Though Seals' lawsuit concerned collection of the accidental death benefits, she stated in her deposition that she wrote letters to Life Investors threatening litigation over the accidental death claims and the claims under the other existing policies. These circumstances demonstrate a unilateral mistake on the part of Seals and Hurd. Therefore, we affirm the trial court's conclusion that there was no mutual mistake of both parties for this settlement agreement and we must now determine if Seals' and Hurd's unilateral mistake falls within an exception.

Seals and Hurd alternatively argue that, because Life Investors failed to inform Greer that the GXB policies covered more than accidental death benefits, this inaction resulted in a unilateral mistake requiring reformation of the settlement agreement to conform with Seals' and Hurd's understanding. Upon review of the record, we see no merit in this argument. At no time during the negotiation period did Hurd or Seals discuss the terms of the settlement agreement with Poss, Dooley or any other Life Investors representative. All discussions were with their own attorney, Greer. Greer was provided with copies of the GXB policies, and, had he reviewed them, he would have discovered they encompassed more than accidental death benefits. In addition to Greer's failure to examine copies of the GXB policies, Seals' failure to discuss the GXB policies' scope with Greer only added to her counsel's ignorance. The record is simply devoid of any evidence, let alone clear and convincing evidence, of fraud or a material omission on the part of Life Investors, Poss or Dooley. Therefore, we affirm the trial court's denial of reformation of the settlement agreement.

### Attorney's Fees

Appellant Life Investors argues the trial court erred when it refused to award, pursuant to the settlement agreement,[2] its attorney's fees incurred in defending the lawsuit brought against them by

---

[2] Specifically, in paragraph 7 of the settlement agreement, it states that:

(7)     Releasors agree to indemnify and hold Releasees, and each of them, harmless from and against any and all claims, demands, damages, debts, liabilities, obligations, costs, expenses, liens, attorney's fees, actions and causes of action (whether or not litigation is commenced) arising from any matter released herein or in connection with any lawsuit or other proceeding brought or prosecuted contrary to the provisions of this Settlement Agreement and Release, including, but not limited to, all remedies referred to in paragraphs

(continued...)

Seals and Hurd. Tennessee follows the "American Rule" that, in the absence of a contract, statute or recognized ground of equity, attorney's fees are not recoverable from the unsuccessful party in a lawsuit. *State ex rel. Orr v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985). When a provision in the contract provides for the collection of attorney's fees from the unsuccessful party in the event litigation arises, the prevailing party is entitled to enforcement of the contract according to its express terms. *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988); *Keehn v. Hosier v. Crye-Leike Commercial, Inc.*, No. M2000-01182-COA-R3-CV, 2001 Tenn. App. LEXIS 498, at *6-8 (Tenn. Ct. App. July 17, 2001). Therefore, "parties who have prevailed in litigation to enforce contract rights are entitled to recover their reasonable attorney's fees once they demonstrate that the contract upon which their claims are based contains a provision entitling the prevailing party to its attorney's fees." *Keehn*, 2001 Tenn. App. LEXIS, at *7-8. When the contract provides that a prevailing party is entitled to recover its attorney's fees for enforcing the contract, "the trial court has no discretion regarding whether to award attorney's fees or not." *Id.* at *15-16; *see also Carson Creek Vacation Resorts v. Dep't of Revenue*, 865 S.W.2d 1 (Tenn. 1993). It is the amount of the attorney's fee award that falls within the trial court's discretion. *Keehn*, 2001 Tenn. App. LEXIS, at *16 (citing *Albright v. Mercer*, 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996); *Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990)); *see also Carson Creek Vacation Resorts*, 865 S.W.2d at 2.

In this case, the trial court found in favor of the defendants, Life Investors, Leitner, Williams PLLC, and Poss, and refused to reform the contract allowing its provisions to stand. However, the trial court refused to award defendants their attorney's fees incurred in defending the suit despite the provision in the settlement agreement. The court below did not find the defendants had waived litigation of the issue as its Judgment of Dismissal and the transcript of proceedings reflect that the parties stipulated the proof of attorney's fees could be submitted by affidavit after resolution of the reformation issue. Therefore, we hold the trial court erred when it refused to enforce the indemnification clause of the settlement agreement. For this reason, we reverse the trial court's denial of award of defendants' attorney's fees and remand for further proceedings consistent with this opinion.

---

[2](...continued)

9 and 10. In this regard, Releasors agree that this Settlement Agreement and Release may be pleaded as a defense and/or as a Cross-Complaint, Counter-Claim, Cross-Claim, or Third-Party Complaint in such lawsuit or proceeding, and may be used as the basis for an injunction against any action, suit or other proceeding which may be prosecuted, instituted or attempted by any party hereto in breach.

**Conclusion**

For the foregoing reasons, we affirm in part, reverse in part, and remand this case for further proceedings. Costs are judged against appellees, Inez Jean Seals and Terry Hurd, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE