IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 8, 2002 Session

## CASTLETON CAPITAL COMPANY, L.L.C.  v.
## LUCIUS E. BURCH, III

**Appeal from the Chancery Court for Davidson County**
**No.  98-3860-II          Honorable Carol McCoy, Chancellor**

_____

**No.  M2001-01597-COA-R3-CV - Filed April 23, 2004**

_____

The Plaintiff filed suit seeking to recover a deficiency on a loan executed by the Defendant and another left owing after foreclosure upon real estate.  The Defendant had purchased a parcel of real estate from a company in which he was a director, and had assumed responsibility for repayment of a loan secured by that real estate.  The Defendant denied liability, and alleged mutual mistake and negligent misrepresentation surrounding the loan against the lender because the loan documents he signed contained language regarding cross-collateralization involving a separate parcel of real estate formerly owned by the company in which the Defendant was a director, which real estate was sold two days prior to assumption of the loan obligations by the Defendant.  Following a bench trial, the Chancellor granted judgment for the Plaintiff for $134,127.65 and attorneys' fees totaling $73,417.37, for a total judgment of $207,545.02.  The Defendant appealed.  We affirm.

**Tenn. R. App. P. 3 Appeal of Right;  Judgment of the Chancery Court Affirmed**

ROBERT E. CORLEW, III, Sp. J., delivered the opinion of the court, in which BEN H. CANTRELL, P. J., M.S., and WILLIAM C. KOCH, JR., J., joined.

W. Gary Blackburn and Mathew R. Zenner, Blackburn & McCune, P.C., for the Appellant, Lucius E. Burch, III.

Charles W. McElroy, White & Reasor, Nashville, Tennessee, for the Appellee, Castleton Capital Company, LLC.

## OPINION

Before us is an appeal from the Chancery Court for Davidson County which granted judgment to the Plaintiff against the Defendant in the sum of $207,545.02, including principal, interest, and other fees in the amount of $134,127.65 and attorneys' fees in the amount of $73,417.37.

Defendant Burch was a director of Automotive Franchise Corporation (AFC). In 1986, while the Defendant was serving as a director, AFC entered into two loan agreements with Metropolitan Federal Savings and Loan Association. One loan financed a project in Chesapeake, Virginia, and the other financed a project in Gwinnett County, Georgia. Each loan was documented by a separate promissory note, each of which matured on June 30, 1987. Each loan was secured by the parcel of real estate for which the loan was made, but language was included within each deed of trust so that each loan was secured by both pieces of property. All loan documents were executed by Joseph Dockery, President of AFC, on behalf of the corporation.

When the loans were not paid on the original due date, the corporation obtained extensions. Eventually, AFC found itself in a precarious financial condition, and in an effort to alleviate some of that financial hardship, on December 27, 1988, AFC sold the Georgia property to a company known as The Betty Company, associated with Waffle House, Inc. for $290,000. The loan directly secured by the Georgia property in the sum of $267,652.14 was then paid in full from the proceeds of the sale. The record reflects that the sum approximating $22,000 in excess of the amount of the loan secured by the property was derived from the sale, but was not applied toward the loan on the Virginia property. Although the record does not fully explain the disposition of those funds, there is an inference that the additional money derived from the sale was used to pay the costs associated with the sale of that real estate.

Two days later, Defendant Burch and Mr. Dockery purchased, as co-tenants, the Virginia property from AFC, and by agreement, assumed that debt. The parties executed the Assumption Agreement on December 29, 1988. Subsequently, both Mr. Dockery individually and AFC filed actions for relief under the United States Bankruptcy Code. Metropolitan Federal was placed in receivership. The loan assumed by the Defendant and Mr. Dockery was then purchased by an affiliate of the Plaintiff, then assigned to the Plaintiff. No payments were made to the Plaintiff when the note matured on January 1, 1995. Demand for payment was subsequently made, but no action was taken to foreclose upon the real estate until June, 1997, due to the existence of a stay issued by the Federal Bankruptcy Court in the case involving Mr. Dockery. Prior to the foreclosure, notice was given by the Plaintiff to the Defendant that the Plaintiff claimed sums totaling in excess of $736,000. The sum of $650,000 was derived from the foreclosure sale. The loan bears interest in the sum of 8.95 percent.

The Defendant asserted affirmative defenses asserting unenforceability of his Assumption Agreement based upon the theories of mutual mistake and negligent misrepresentation. He alleged that because the Assumption Agreement continued to contain language surrounding the cross-collateralization agreement concerning the Georgia real estate, which in fact had been sold two days before he assumed the debt secured by the Virginia property, there existed a mutual mistake.

Our review of questions of fact is *de novo* upon the record, accompanied by a presumption of the correctness of the findings of the Trial Court, unless the preponderance of the evidence is to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Our review with respect to questions of law is *de novo* without a presumption of correctness. *Rutherford County v. Wilson*,

121 S.W.3d 591, 595 (Tenn. 2003).

The Trial Court found that there was no mutual mistake, and all persons who testified, with the exception of Defendant Burch, acknowledged that they knew of the sale of the Georgia property. The Court found that the lender knew of the sale of the property, and Mr. Dockery acknowledged on behalf of himself and AFC, that he knew of the prior sale at the time of the entry of the Assumption Agreement. The Trial Court thus found that there was no mutual mistake. We agree. It is perhaps elementary under our law that in order to set aside a contract on the ground of mutual mistake, the mistake in fact must be mutual. Thus, to be a mutual mistake, the issue must involve a material fact about which neither party to the contract was correctly informed, and the parties on each side of the transaction were mistaken in their belief as to the material facts which were a basis for the agreement. *Kosterman Development Corp., v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 632 (Tenn. Ct. App. 2002) *perm. app. denied* ("In order to authorize relief for mistake the mistake generally must have been mutual, and it must have been material"); *Loveday v. Cate*, 854 S.W.2d 877, 880 (Tenn. Ct. App. 1992) *perm. app. denied* (1993); *Robinson v. Brooks*, 577 S.W.2d 207, 209 (Tenn. Ct. App. 1978) *cert. denied* (1979). Unilateral mistake will not justify rescission of a contract absent other circumstances such as fraud or misrepresentation. *Lane v. Spriggs*, 71 S.W.3d 286, 289 (Tenn. Ct. 2001) *perm. app. denied* (2002) (rescission, cancellation, and reaffirmation). On occasion, our courts have granted relief from the effect of a mistake which is unilateral where the other party knows or has reason to know of the other's error, and has good reason to believe that a mistake had been made. *Cofrancesco Construction Company v. Superior Components, Inc.*, 371 S.W.2d 821, 823-824 (Tenn. Ct. App. 1963) *cert. denied*.

The Defendant, relying on an unreported case from this Court, *Wilkey, et al v. Rhea County*, *Tennessee, et al*, [unpublished] 2000 Tenn. App. Lexis 397, 2000 WL 782011 (Tenn. Ct. App., June 20, 2000), *no perm. app. sought*, asserts that the reference in the Assumption Agreement documents to the Georgia property invalidates his Assumption Agreement on the ground of mutual mistake. Although the case at bar and *Wilkey* both involve issues where it was later determined that legal documents contained inaccuracies, there the similarity ends. *Wilkey* involves the sale of property where at an auction, it was represented that the seller was selling 10.5 acres when only 7.94 acres was conveyed. The sale of land in *Wilkey* was the essence of the contract. The Court in *Wilkey* found the quantity of land to be an issue material to the transaction, that the buyer had no reasonable means of learning the correct acreage, and that the seller was likewise of the mistaken belief that 10.5 acres, not 7.94 acres, was being conveyed. In the suit at bar, the essence of the contract was the assumption of a loan agreement through which the Defendant and another assumed an indebtedness previously borrowed by a company of which they were both directors, and borrowed an additional sum of money over and above that which previously had been secured. There was no mistake as to the amount of the loan in the suit at bar, and no mistake as to the terms of repayment. In the case at bar, it is unquestioned that the lender knew at the time of the closing of the loan that the Georgia property had been sold two days earlier, and similarly that one of the two borrowers, Mr. Dockery, likewise knew. From the standpoint of all of these parties, failure to remove reference to the Georgia property within these documents was merely a clerical error. The Trial Court found the matters in the case at bar not to be material.

3

The Trial Court also found in the case at bar that the Defendant had the means of learning the true information, and that he relied, to his detriment, upon his co-borrower. Nonetheless, the Defendant asserts that he had no knowledge of the sale by AFC of the Georgia property. The Trial Court was unimpressed by his protestations, and questioned the credibility of a man who claimed to know very little about the sale of land in Georgia by the company of which he was a director, when two days later he personally committed himself to a loan in excess of one-half million dollars to aid that same company. We apply the presumption of correctness to the finding of the Trial Court. Given these factual findings, our determinations in *Wilkey* are clearly distinguishable from the suit at bar, and the rule of law applied in *Wilkey* has no application in the suit before us.

The Trial Court further found that any claims which the Defendant might have with regard to negligent misrepresentation arose and were either known to the Defendant or should have been known by him in 1995, and knowledge of Mr. Dockery was imputed to him in 1988, all of which is more than three years before this suit was filed in 1998 or the answer setting forth the defenses was filed in 1999. Again we agree. The facts show that Defendant Burch knew, or certainly should have known at the time he signed the Assumption Agreement, that the Georgia property was discussed in the Assumption Agreement which he signed. Burch remained a member of the Board of Directors of AFC at all times when consideration of the sale of the two properties occurred. Defendant Burch knew or should have known when demand for payment was made on him on March 27, 1995, that AFC had in fact sold the Georgia property in 1988. In a larger sense, no representation was ever made to Defendant Burch of any control that he or the lender had with regard to the Georgia property, and AFC, the owner of the Georgia property, had the right to sell that property at any time, just as it sold the Virginia property to Defendant Burch and Mr. Dockery. We agree with the Trial Court that Defendant Burch should have known of the sale of the Georgia property for a period of time so long that the three year statute of limitations had run, and based upon that finding, we need not further address the lack of merit of that claim.

Because we agree with the Trial Court that the Defendant either knew or should have known that the Georgia property had been sold, we need not further address the finding of the Trial Court that the Georgia property was immaterial to the transaction concerning the Virginia property, or the finding by the Trial Court that the Defendant and Mr. Dockery were partners as to this real estate in which they were co-tenants or the loan in which they were co-borrowers.

Defendant Burch then further asserts a unilateral mistake on his own part, coupled with the defense of negligent misrepresentation. We have already addressed the knowledge of the Defendant with respect to the sale of the Georgia property. The Defendant's knowledge, by itself, defeats his defense. Nonetheless, we are compelled to address the application of the statute of limitations to the Defendant's allegations of negligent misrepresentation. The limitation of actions for negligent misrepresentation are governed by the provision of *Tennessee Code Annotated* §28-3-105, which provides a limitation of three years. *Medical Education Assistance Corp. v. East Tennessee State University Quillen College v. Mehta*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999) *perm. app. denie*d (2000). In *Medical Education Assistance Corp.*, the Court was faced with a question similar to one now before us, in the enforcement of a contract against a physician. The physician alleged negligent

4

misrepresentation which induced him to sign an employment contract containing a covenant not to compete. Because the physician did not raise the issue of misrepresentation until he filed his answer, which was more than three (3) years before the Court found that he should have discovered the alleged misrepresentation, his defense of misrepresentation was barred. *Id*. We find the facts of the case at bar, where the Defendant alleges misrepresentation inducing him to sign a promissory note and other loan documents to be sufficiently similar and legally analogous to the circumstances in *Medical Education Assistance Corp.,* where the Defendant alleged, as a defense to a non-compete agreement, negligent misrepresentation inducing him to sign the employment contract. Thus, we find that the Trial Court correctly found that the Defendant's defense of negligent misrepresentation is time barred.

Thus, we find the judgment of the Trial Court should be affirmed in all respects. The cause will be remanded to the Trial Court for a determination of further attorneys' fees, if any, which may be appropriate, which have been incurred since the prior award of counsel fees. Costs of the appeal will be taxed against the Appellant.

 

 

_____
ROBERT E. CORLEW, III
SPECIAL JUDGE

5